UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **800 BOURBON STREET, LLC** | **14-12770** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| | |
| **800 BOURBON STREET, LLC** | ADVERSARY NO. |
| PLAINTIFF | **15-1052** |
| VERSUS | |
| **BAY BRIDGE BUILDING LIMITED COMPANY, LLC** | |
| DEFENDANT | |

## MEMORANDUM OPINION

This matter came before the Court on October 14, 2015, on cross Motions for Summary Judgment filed by Bay Bridge Building Limited Company, LLC's ("Bay Bridge") and 800 Bourbon Street, LLC ("800 Bourbon or Debtor").[1] At the conclusion of the hearing, the Court set a deadline of October 28, 2015, to file post-hearing briefs. Upon submission of the briefs, the Court took the matters under advisement.

**I. Summary Judgment Standard**

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.[2] The Court must view the evidence introduced and

---

[1] P-10, 17.

[2] *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).

all factual inferences in a light most favorable to the party opposing summary judgment.[3] The movant bears the burden of proving "absence of genuine issue of material fact."[4] "An issue is material if its resolution could affect the outcome of the action."[5]

**II. Findings of Fact**

On June 11, 2008, 800 Bourbon filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("2008 Bankruptcy").[6] Bay Bridge filed a secured claim ("2008 claim") in 800 Bourbon's case.[7] The Court confirmed 800 Bourbon's Plan of Reorganization in 2009 ("2009 Plan"). The 2009 Plan provides the following treatment for Bay Bridge's 2008 claim:

> Guarantor, John L. Chisholm, Jr., and Chisholm Properties Circuit Events, LLC, assume full payment of all obligations of the Debtor to this Class Claimant, ...
>
> To the extent this Class Claimant has an allowed secured claim, the Collateral Mortgage, Collateral Mortgage Note, Hand Note, and/or auxiliary Promissory Notes, properly paraphed, shall remain as collateral security, but "in rem" only. Amended collateral security documents and notes will be prepared, executed and recorded in the Parish of Orleans if requested by this Class Claimant. ...[8]

The 2008 Bankruptcy was closed on August 17, 2011. Chisholm and Chisholm Properties Circuit Events, LLC have not paid Bay Bridge's 2008 claim in full.

---

[3] *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

[5] *Weeks Marine, Inc. v. Fireman's Fund Insurance Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

[6] Case no. 08-11322.

[7] Case no. 08-11322, Proof of Claim 1.

[8] Case no. 08-11322, P-208.

On October 15, 2014, 800 Bourbon and Louisiana Interests, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively "Debtors"). Debtors filed a Joint Disclosure Statement and Plan of Reorganization which proposed a sale by court auction of substantially all Debtors' assets combined in one package. The auction was scheduled for the date of the confirmation hearing. The Court approved the Disclosure Statement for the Second Amended Joint Plan of Reorganization ("Disclosure Statement")[9] on June 17, 2015.[10] Also on June 17, 2015, the Court granted Debtors' Motion for Sale of Property Free and Clear of Liens which provided procedures for the auction to be held by the Court.[11]

On July 15, 2015, after the Disclosure Statement was approved, Bay Bridge filed proof of claim no. 5 in 800 Bourbon's bankruptcy case ("Bay Bridge claim"). The Bay Bridge claim for $1,979,886.47 is allegedly secured by the building owned by 800 Bourbon and with the same address. Bay Bridge's claim is evidenced by four (4) promissory notes signed by Johnny Chisholm on behalf of 800 Bourbon more particularly described:

1) Promissory Note dated April 21, 2005, in the amount of $2,000,000.00;

2) Promissory Note dated April 2005 in the amount of $1.200,000.00;[12]

3) Promissory Note dated May 31, 2005, in the amount of $200,000.00;

4) Promissory Note dated May 10, 2006, in the amount of $110,000.00.[13]

---

[9] 14-12270, P-171; 14-12772, P-291.

[10] 14-12770, P-176; 14-12772, P-299.

[11] 14-12770, P-175; 14-12772, P-

[12] No day is on the Promissory Note.

[13] 14-12770, Proof of Claim 5.

3

Bay Bridge also holds a collateral mortgage note dated April 21, 2005, secured by a collateral mortgage ("Mortgage") on the property at 800 Bourbon Street. The same Promissory Notes and Mortgage formed the basis for Bay Bridge's proof of claim in the 2008 Bankruptcy.

On July 21, 2015, 800 Bourbon filed the instant adversary proceeding objecting to Bay Bridge's proof of claim.

On July 22, 2015, directly prior to the confirmation hearing, the Court held an auction of substantially all of the assets of Debtors, including Bay Bridge's collateral. The prevailing bid for for $8,175,000 was approved by an Order entered on August 3, 2015.[14] On that same date, the Court confirmed Debtors' Second Amended Joint Chapter 11 Plan ("Plan").[15] By agreement between Bay Bridge and Debtors, the Order approving the sale and the Confirmation Order provided for the escrow of $1,649,000 of sale proceeds subject to Bay Bridge's lien. The escrow was to be held until further order of the Court.

As a result of the agreement, Bay Bridge released its lien against 800 Bourbon's property and now seeks distribution of the funds held in escrow.

Bay Bridge recorded its Mortgage on April 29, 2005. Bay Bridge reinscribed the Mortgage on July 23, 2015.

---

[14] 14-12770, P-242; 14-12772, P-366.

[15] 14-12770, P-240; 14-12772, P-361.

**III. Conclusions of Law**

A properly filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim."[16] Because 800 Bourbon has objected to Bay Bridge's proof of claim, it is 800 Bourbon's "burden to present enough evidence to overcome the *prima facie* effect of the claim"[17]

800 Bourbon contends that because Bay Bridge reinscribed the Mortgage after cessation of its effectiveness, Bay Bridge does not have a secured claim. It also challenges the existence of any claims against the estate based on the 2009 Plan. On the other hand, Bay Bridge contends that it has a valid *in rem* Mortgage properly perfected on the petition date. It also asserts that because its secured interest existed on the petition date, reinscription of the Mortgage was unnecessary. Bay Bridge also claims that 800 Bourbon is estopped from challenging the validity of its secured position and that the 2009 Plan is *res judicata* on the issue.

**A. 2009 Plan**

**1. Does Bay Bridge have an *in rem* claim?**

800 Bourbon contends that Bay Bridge has no claim under the 2009 Plan because the 2009 Plan provides, "Bay Bridge shall not be entitled to receive any payments from the Debtor/Reorganized Debtor or the Bankruptcy Estate, for any hand notes signed by the Debtor." However, the 2009 Plan also provides that Bay Bridge has an *in rem* claim:

> To the extent this Class Claimant has an allowed secured claim, the Collateral Mortgage, Collateral Mortgage Note, Hand Note, and/or auxiliary Promissory Notes, properly paraphed, shall remain as collateral security, but "in rem" only.

---

[16] F.R.B.P. 3001(f).

[17] *Matter of O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998) (citation omitted).

The 2009 Plan further provides that the terms of the agreement between Bay Bridge, 800 Bourbon, Chisholm and Chisholm Properties Circuit Events, LLC are stated in the signed letter agreement attached as Exhibit C to 800 Bourbon's 2009 Disclosure Statement.[18] In both the 2009 Plan and the letter agreement, 800 Bourbon acknowledges that Bay Bridge holds a collateral mortgage and Bay Bridge will have an *in rem* lien on 800 Bourbon's property. The letter agreement provides:

> Bay Bridge is agreeing to permit Johnny Chisholm and Chisholm Properties Circuit Events, LLC to assume any and all obligations under the loans/notes. 800 Bourbon St., LLC will be released from [its] personal obligations. HOWEVER, Bay Bridge's Collateral Mortgage and [*in rem*] claim reflected therein shall not be released or otherwise affected and shall remain as security for the foregoing obligations.
>
> Although the pertinent notes have matured, Bay Bridge [ ] is agreeing to forebear from enforcing its rights under the Collateral Mortgage on the following terms ..."

In 2009 and in order for 800 Bourbon to have a feasible plan of reorganization, Bay Bridge agreed to waive 800 Bourbon's personal obligation. As part of the bargained for agreement, 800 Bourbon agreed that Bay Bridge retained an *in rem* claim. This Court confirmed the 2009 Plan that incorporated this agreement. 800 Bourbon is now seeking for this Court to interpret this provision differently.

The provision regarding payments was an acknowledgment by Bay Bridge that it would not receive any distributions under the 2009 Plan. The provision that provides Bay Bridge an *in rem* claim is not at odds with this understanding.

The 2009 Plan provides that Bay Bridge has an *in rem* claim to the extent that it has an allowed secured claim. 800 Bourbon maintains that Bay Bridge did not have an allowed secured claim, so it has no *in rem* claim. A properly filed proof of claim is "prima facie evidence of the

---

[18] *See* Case 08-11322, P-192, Exh. C.

validity and amount of the claim."[19] 800 Bourbon provided treatment of Bay Bridge's claim in its Disclosure Statement and Plan. The 2009 Plan provides a deadline to object to claims of 60 days from the date of the confirmation order.[20] 800 Bourbon did not object to Bay Bridge's claim. Therefore, it was allowed.

> The 2009 Plan provides:
>
> Pursuant to a Proof of Claim filed by Bay Bridge on June 24, 2008, it filed a secured claim of $1,360,571.01. ...Based on analysis of the loan, the Debtor believes the amount reflected in the Proof of Claim filed by Bay Bridge is correct.[21]

Therefore, the 2009 Plan is clear that Bay Bridge had an allowed secured *in rem* claim of $1,360,571.01.

### 2. Is 800 Bourbon Estopped from Attacking the Claim, or Is Its Challenge Barred by *Res Judicata*?

Bay Bridge contends that 800 Bourbon is estopped from attacking the validity of the Mortgage because its claim was allowed in the 2009 Plan.[22] More specifically, Bay Bridge maintains that reinscription of its security interest was unnecessary once the 2009 Plan was confirmed because the Debtor acknowledged its debt as secured.

---

[19] F.R.B.P. 3001(f).

[20] Case 08-11322, P-208, Plan, ¶ 10.05(b).

[21] *Id*. at ¶ 5.02.

[22] P-17.

The 2009 Plan provides:

Pursuant to a Proof of Claim filed by Bay Bridge on June 24, 2008, it filed a secured claim of $1,360,571.01. ... Based on its analysis of the loan, the Debtor believes the amount reflected in the Proof of Claim filed by Bay Bridge is correct.[23]

The 2009 Plan recognized the debt and Mortgage, but it did not excuse Bay Bridge from maintaining the perfection of its security post-confirmation. Therefore, 800 Bourbon is not estopped from raising Bay Bridge's failure to maintain perfection following the confirmation of the 2009 Plan.

*Res judicata* is also inapplicable. For *res judicata* to apply the same claim or issue must be involved in both actions.[24] The relevant facts, namely the failure of Bay Bridge to reinscribe, arose after the 2009 Plan was confirmed. Therefore, the same claim or issue is not involved, and *res judicata* is inapplicable to whether Bay Bridge maintained its security interest after the 2009 Plan.

**B. What is The Legal Basis for 800 Bourbon's Challenge?**

At the outset it is helpful to examine the factual and legal underpinnings of 800 Bourbon's challenge to the Bay Bridge claim. The facts of this case are not in dispute.

Bay Bridge holds four (4) promissory notes made by 800 Bourbon. As of the filing date, Bay Bridge held a collateral mortgage note secured by a collateral mortgage against 800 Bourbon's real property. Bay Bridge alleges that the collateral mortgage and mortgage note were pledged to it to secure the repayment of the promissory notes. The debt is *in rem* so it is only enforceable against the property. Bay Bridge's mortgage was originally recorded in the mortgage records for Orleans Parish on April 29, 2005, and is subordinate in rank to the secured claims of First Bank and Trust ("FBT"). However, equity in the property over and above the amounts owed to FBT exists.

---

[23] Case no. 08-11322, P-208, ¶ 5.02.

[24] *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

800 Bourbon does not challenge the amount owed to Bay Bridge.[25] Debtor's challenge to Bay Bridge's claim is grounded in §§ 362, 502, 544, and 549 of the Bankruptcy Code.

**1. 11 U.S.C. § 544**

Section 544(a) provides that a trustee may avoid a transfer of property of the estate if a hypothetical creditor could do so, whether or not such a creditor actually exists.[26] A debtor-in-possession has the rights of a trustee.[27] 800 Bourbon contends that because it has the rights of a secured creditor as of the petition date, it can avoid Bay Bridge's lien.

Bay Bridge, on the other hand, contends that pursuant to 11 U.S.C. § 544 a trustee or debtor-in-possessions's avoidance powers arise on the petition date. It argues that because the Mortgage was perfected as of the petition date, it has a valid lien that cannot be avoided under 11 U.S.C. § 544.

---

[25] In its Reply to Bay Bridge's Cross Motion for Summary Judgment, 800 Bourbon raises four (4) new issues: 1) Bay Bridge's proof of claim was signed by its attorney rather than a person with personal knowledge; 2) Bay Bridge has not shown how it applied payments among the four (4) promissory notes; 3) Bay Bridge has not provided evidence of the pledge agreement; and 4) whether the principal obligation is enforceable. P-19. Because these issues were not raised by 800 Bourbon in its Complaint or Amended Complaint, it is improper for it to raise the issues in its Reply brief. Therefore, these issues will not be considered by the Court. The Court notes that F.R.B.P. 3001(b) provides that a proof of claim may be executed by either "the creditor or the creditor's authorized agent." The Court also notes that 800 Bourbon's Complaint and Amended Complaint do not pray for reduction of Bay Bridge's claim based on misapplied payments. *See* P-1, 7. In its Amended Complaint, 800 Bourbon prays for a reduction as to attorney's fees. However, the issue of Bay Bridge's attorney's fees is moot because Bay Bridge agreed at the confirmation hearing to waive its claim for attorney's fees so that the plan would be confirmable. *See* P-17. As set forth above, the Court finds Bay Bridge's debt enforceable. *See supra* p. 7.

[26] 5 Collier of Bankruptcy, ¶ 544.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[27] 11 U.S.C. § 1107.

Section 544 is designed to avoid prepetition transfers by a debtor to a creditor. Generally, for a prepetition transaction to be avoidable, the creditor must have improved its position to the detriment of other creditors.

Section 544 avoidance actions create a legal fiction as of a particular date, the petition date. Section 544 actions view rights between a debtor and creditor at a snapshot in time. Debtor disputes that Bay Bridge's lien was effective on the petition date, arguing:

> Here, Bay Bridge untimely filed a reinscription which thereby retroactively invalidated any perfection which may have borne against the property as of the Petition Date.[28]

Debtor has not provided any statutory or jurisprudential law for its position and this Court could find none.

Bay Bridge's lien was properly perfected from April 29, 2005, until April 29, 2015, which was after the petition date. Therefore, Bay Bridge's lien was perfected on the petition date, October 15, 2014. Because Bay Bridge's lien was perfected on the petition date, there was no prepetition transfer.[29]

> The section 544(a) powers and section (b) powers are limited by their terms and may not be used by the trustee to avoid postpetition transfers. Avoidance of postpetition transfers is governed by section 549.[30]

---

[28] P-19, p. 4.

[29] As discussed below, both the lapse of perfection and reinscription are events that effect Bay Bridge's secured status. However, because the events occurred postpetition, the Court must look to other statutes or laws when considering 800 Bourbon's position.

[30] 5 Collier on Bankruptcy, ¶ 544.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted).

**2. The Effect of Bay Bridge's Failure to Timely Reinscribe**

As explained above, Bay Bridge held a properly perfected security interest on the petition date. However, the filing of a bankruptcy does not excuse a creditor from maintaining its security interest postpetition. Although Bay Bridge argues to the contrary, nothing in the jurisprudence or Bankruptcy Code enshrines the creditor's secured status or ranking as of the petition date and nothing in the Code excuses it from guarding against loss.

Although no cases could be found on point. *DeBaillon v. Wilson (In re Jack/Wade Drilling, Inc.)*[31] is illustrative. In *Wilson*, various contractors obtained mineral liens against an operating well for unpaid services. While La. R.S. 9:4862 granted the lien, in order to preserve the privilege, the lienholder was required to file a Notice of Privilege within 180 days after the last day services were performed.[32] The 180 day period lapsed after the filing for bankruptcy relief.

Unquestionably, the lienholders were secured on the petition date. However, the Court had little difficulty finding that their secured positions were lost postpetition because they failed to filed the Notice of Privilege within 180 days of completion. As the *Wilson* case explains, the failure to protect the secured status of a lien postpetition results in the loss of security.

"[T]he validity and extent of a security interest in property of the estate is controlled by state law unless some other federal interest requires a different result."[33] In Louisiana, "a mortgage has effect between the parties from the time the mortgage is established and as to third persons from the

---

[31] *DeBaillon v. Wilson (In re Jack/Wade Drilling, Inc.)*, 213 B.R. 493 (Bankr.W.D.La. 1997).

[32] La. R.S. 9:4865.

[33] *In re Adams*, 403 B.R. 387, 393 (Bankr.E.D.La. 2009) (citing *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914 (1979)).

time the contract of mortgage is filed for registry."[34] Therefore, mortgages must be recorded in order to effect third parties.[35] "A third person is a person who is not a party to or personally bound by an instrument.[36]

Under Louisiana law, recordation not only gives effect as to third parties, but it also establishes priority among lienholders: "The mortgagee is preferred to the unsecured creditors of the mortgagor and to others whose rights become effective after the mortgage becomes effective as to them."[37]

"[T]he effect of recordation of an instrument creating a mortgage ... ceases ten years after the date of instrument."[38] La. C.C. art. 3362 provides a method for reinscribing a mortgage instrument by a notice of reinscription. If the "notice of reinscription is recorded before the effect of recordation ceases[,]" the recordation continues for another ten years.[39] On the other hand, if a notice of reinscription is filed after the ten year period has run, rather than continuing the prior recordation, recordation begins anew at the reinscription.[40]

---

[34] La. C.C. art. 3298(B).

[35] La. C.C. art. 3338.

[36] La. C.C. art. 3343.

[37] La. C.C. art. 3307(3).

[38] La. C.C. art. 3357.

[39] La. C.C. art. 3364.

[40] La. C.C. art. 3365. The effect is a re-ranking of liens. The creditors who ranked below the creditor who fails to reinscribe timely will move ahead in priority. *F.D.I.C. v. McFarland*, 243 F.3d 876, 885 (5th Cir. 2001).

Under Louisiana law, once the perfection of a mortgage lapses, the reinscription perfects the security interest and provides a new ranking as of that date rather than continuing the pre-existing interest.[41]

Bay Bridge argues that its interests are "frozen" as of the petition date. Its position is taken from several opinions applying common law. To summarize, these courts hold that a creditor's status under a properly perfected security interest on the petition date is frozen or fixed for purposes of the bankruptcy case. Bay Bridge argues that these same cases excuse a secured creditor's obligation to maintain its secured status postpetition. Closer reading of the cases does not support this argument.

In each cited case, the debtor or trustee was attempting to avoid a lien under section 544, which for reasons previously explained is inapplicable to the facts of this case. Second, although the liens in question lapsed postpetition, applicable state law preserved the creditor's position.

For example, in *Highland Constr. Mgmt. Servs. v. Wells Fargo, N.A. (In re Highland Constr. Mgmt. Servs.),*[42] the ruling was:

> The debtor cannot avoid the secured creditor's security interest under § 544(a) because as of the date of the filing of the petition, his lien was properly perfected. A § 544(a) avoidance action looks to that point in time, not a later lapse.

In *Highland,* postpetition a secured creditor failed to timely file a U.C.C. Continuation Statement. In an effort to determine the effect of this lapse, *Highland Construction* looked to applicable state law. Virginia Code § 8.9A-515(c), provided:

---

[41] For the reasons set forth below, the reinscription, post lapse, constitutes a violation of the automatic stay.

[42] *Highland Constr. Mgmt. Servs. v. Wells Fargo, N.A. (In re Highland Constr. Mgmt. Servs.)*, 497 B.R. 829, 843 (Bankr.E.D.Va. 2013).

> .....[T]he effectiveness of the perfected security interest [continues] as to all parties as of the date of the lapse as if no lapse had occurred, but not as to new parties who become secured creditors or lien creditors thereafter.[43]

Although *Highland* characterizes this as a "freeze" of the creditor's position as of the petition date, in actuality it is the application of state law that creates the "freeze."

Virginia, like many other common law states, treats the recordation of a U.C.C. Financing Statement as a notice requirement. The rationale is that once on notice, always on notice, so a lapse in recordation has no effect on existing creditors. Once a bankruptcy is filed, no new interests can be created after the petition date without court approval. Therefore, all interests in competition with the secured creditor are fixed as of the petition date. Since Virginia law provides that the lapse of a security filing has no affect as to creditors in existence as of the date of the lapse, the lapse postpetition has no effect on the secured creditor's position. As a consequence and regardless of how the challenge arose, the lapse did not result in the loss of ranking or security. As set forth above, the application of Louisiana law to these facts would not have the same result.

*I.R. Toranto v. Dzikowski*[44] is similarly grounded. In *Toranto* Florida law was applied. Florida law provides:

> [T]he date of a lapse of a judgment lien whose enforceability has been temporarily stayed or enjoined as a result of any legal or equitable proceeding is tolled until 30 days after the stay or injunction is terminated.[45]

---

[43] *Id.*

[44] *I.R. Toranto v. Dzikowski*, 380 B.R. 96 (S.D.Fla. 2007). *Toranto* also utilized § 544 rather than §§ 362 and 502.

[45] *Toranto*, 380 B.R.. at 100 (citing Fla. Stat. § 55.204(5).

Like *Highland,* in *Toranto*, the secured creditor failed to file a continuation statement postpetition. Under Florida law, any action taken by the creditor would not have been to continue or maintain the lien but recreate the lien. Pursuant to section 362(b)(3), an action to "create, perfect, or enforce" a lien is stayed. As a result, Florida law tolled the lapse until thirty (30) days after the stay terminated. Louisiana has no such provision.

Bay Bridge also cites *In re Neuenschwander*[46] for the sentence that provides: "[T]he lien rights of the creditor are fixed under bankruptcy law as of the date the petition is filed." The *Neuenschwander* Court cited only 11 U.S.C. § 544(a) for the proposition. Again, the *Neuenschwander* Court was required to apply Florida law in reaching its conclusion.[47] Section 544 is not invoked by this matter for the reason already explained. Instead, Debtor is challenging Bay Bridge's claim based on its postpetition failure to maintain the lien without reference to an avoidance statute.

A debtor may object to a claim based on any number of grounds including, but not limited to, a dispute as to the amount owed, a defect in the collateral documentation or a failure to perfect its security interest. In this case, Debtor argues that Bay Bridge has lost its secured position due to a lapse in perfection.

There is no language to support a finding that under the Bankruptcy Code a creditor's rights are frozen on the petition date excusing it from maintaining its secured position during the

---

[46] *In re Neuenschwander*, 73 B.R. 327 (Bankr.S.D.Fla. 1987).

[47] *Toranto* also took this position. *Toranto*, 380 B.R. at 99 (citing *In re Wind Power System, Inc.*, 841 F.2d 288, 292 (9th Cir. 1988) and *In re Raiton*, 139 B.R. 931, 934 (9th Cir.BAP 1988). For the reasons set forth above, it is the application of state law rather than the Bankruptcy Code that controls the holding in these cases.

administration of the case for purposes of an objection to claim. As discussed in the next paragraph, the Bankruptcy Code clearly contemplates the opposite.

### 3. The Automatic Stay

The filing of a bankruptcy petition operates as a stay to "any act to create, perfect, or enforce any lien against property of the estate."[48] However, section 362(b)(3) as amended in 1994 provides that the stay is inapplicable to actions "to maintain or continue the perfection of" an interest in property of the estate.[49] Thus, the Bankruptcy Code contemplates lienholders taking steps postpetition to maintain their liens. The policy provided by the legislative history is that "[a]ny of the actions taken to ensure continued perfection merely maintain the *status quo* and do not improve the position of the secured creditor."[50]

Bay Bridge cited *General Electric Credit Corp. v. Nardulli & Sons, Inc.*[51] for the proposition that a lienholder whose financing statement expires postpetition does not have to file a continuation statement. At the hearing, Bay Bridge conceded that *Nardulli* was inapplicable because it was decided prior to the 1994 amendment to section 362.

The Bankruptcy Code specifically allows creditors such as Bay Bridge to file continuation statements without violating the automatic stay. As stated above, property rights are determined by

---

[48] 11 U.S.C. § 362(a)(4).

[49] 11 U.S.C. § 362(b)(3).

[50] S. Rep. 103-168, S. Rep. No. 168, 103RD Cong., 1st Sess. 1993, 1993 WL 444315 (Leg. Hist.), Section 219.

[51] *General Electric Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184 (Bankr.M.D.Pa. 1988).

16

state law. The fact that a lien exists on the petition date does not mean that the lien cannot be lost if the lienholder fails to comply with state law.

### B. Is the Debtor in Possession a Separate Entity?

Having found that Bay Bridge was required to maintain the perfection of its security interest postpetition, the Court must now consider the effect loss of perfection has on the estate. The effect is not as one might expect.

Bay Bridge holds an *in rem* claim against 800 Bourbon. In the typical bankruptcy case, if perfection of a security interest is lost, the creditor becomes unsecured. In the case of an *in rem* debt, the entire claim is lost. For the reasons set forth below, this is not the result in this case.

800 Bourbon and its sister corporation, Louisiana Interests, Inc., had the good fortune of selling their assets *en globo* for $8,175,000.00. By separate ruling, this Court allocated $6,195,832.00 of the proceeds to this estate. Without reference to Bay Bridge's claim, the funds on hand are sufficient to satisfy all administrative, priority, secured and unsecured creditors and leave a residual surplus of approximately $3,557,891.00.

Under Louisiana law, mortgages must be recorded in order to effect third parties.[52] "A third person is a person who is not a party to or personally bound by an instrument.[53] Thus, a mortgage has effect between the parties *whether or not it is recorded*. Thus, the recordation or perfection of a mortgage is irrelevant to its enforcement between the mortgagor and mortgagee. Because all creditors are being paid, Bay Bridge's claim is not in competition with third parties but only with 800 Bourbon.

---

[52] La. C.C. art. 3338.

[53] La. C.C. art. 3343.

17

800 Bourbon contends that as debtor-in-possession, it is a separate legal entity which is not bound by the terms of the Mortgage. The basis of its argument is founded in section 544. When a debtor-in-possession avoids a lien pursuant to section 544, it is not the same entity as the prepetition debtor. Instead, a fiction is created whereby the debtor stands in the shoes of a *bona fide* purchaser of real property or a judgment creditor. It also may avoid a prepetition transfer by standing in the shoes of any actual creditor of the estate. As stated above, section 544 is not applicable in this case because it only applies to prepetition transfers.[54] Instead, 800 Bourbon is trying to avoid a postpetition lien based on sections 362 and 502, not as a hypothetical creditor.

Except in the case of an avoidance statue, or right specifically granted in the Bankruptcy Code (*i.e.* the cram down provision of § 1129(a)(7)(A)(ii)), the debtor-in-possession's rights are defined by those held by the debtor prepetition. For example, the United States Supreme Court ruled in *N.L.R.B. v. Bildisco and Bildisco*[55] that the debtor-in-possession was the same entity as the prepetition debtor who entered the executory contract. The Court can find nothing in the Bankruptcy Code to invalidate the enforceability of the Mortgage against Debtor once all third party claims have been satisfied.

In this case, Bay Bridge had a security interest and lost it through a failure to timely reinscribe postpetition. This lapse is sufficient, without anything more, to negate the security interest as to third parties. For the reasons set forth above, this Court need not refer to any

---

[54] Bay Bridge's lien was perfected on the petition date, so there was no prepetition transfer. Avoidance of postpetition transfers in which the debtor was a participant is governed by section 549, while section 362 and the automatic stay are applied to void unauthorized postpetition transfers. As discussed above, section 362 allows a lien to be maintained without violating the automatic stay.

[55] *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188 (1984).

avoidance statute to conclude that this has occurred. Instead, the loss of secured position flows as a natural consequence of Bay Bridge's own conduct without reference to any third party.

However, having satisfied all third party claims, the above result does not address Bay Bridge's rights *vis-á-vis* 800 Bourbon. 800 Bourbon is a party to the Mortgage held by Bay Bridge. Therefore, Bay Bridge's Mortgage is effective against 800 Bourbon regardless of recordation. Challenge to Bay Bridge's claim is not dependent on its relationship to third party interests as they are all satisfied. Thus, the Court is back to state law and the effect of a lapse in perfection *vis-á-vis* the mortgagor and mortgagee. As explained above, perfection is not a requirement to enforce a mortgage between the parties.

### C. 11 U.S.C. § 108(c)(2) Is Not Applicable

Section 108(c)(2) provides:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of - ...

> (2) 30 days after notice of the termination or expiration of the stay under 362, 922, 1201, 1301 of this title, as the case may be, with respect to such claim.

Section 108(c)(2) applies only to civil court proceedings:

> It applies only to civil actions in courts on claims against the debtor... But it does not appear to apply to other types of acts against the debtor ... that do not involve litigation, such as the filing of documents other than court proceedings.[56]

Bay Bridge contends that section 108(c)(2) tolls the period in which it must reinscribe the Mortgage. The continuation of perfection by Bay Bridge is not a civil court proceeding. Instead, it is governed

---

[56] 2 Collier on Bankruptcy, ¶ 108.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted).

19

by section 362(b)(3), which specifically allows the maintenance or continuation of a security interest without violating the automatic stay.[57] When pursuant to section 362(b)(3) a party is not stayed from continuing its security interest, section 108(c) does not apply.[58]

### D. Increase in the Value of Collateral

The United States Supreme Court has made it clear that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor."[59] Therefore, any increase in value to the property accrues to the benefit of Bay Bridge.

## IV. Conclusion

Bay Bridge's Cross Motion for Summary Judgment is GRANTED, and 800 Bourbon's is DENIED. As prayed for by Bay Bridge in its Cross Motion for Summary Judgment, the allegations in 800 Bourbon's Complaint are denied, and the funds escrowed for Bay Bridge's claim will be released to Bay Bridge. A separate Judgment will be entered in accord with this Opinion.

New Orleans, Louisiana, November 20, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[57] Bay Bridge admitted at the hearing on October 14, 2015, that the case it cited for this position, *In re Krause*, No. 95-2106, 1996 WL 280794 (E.D.La. May 24, 1996) was based on facts prior to the 1994 amendment to section 362(b)(3) was effective. (Allows a creditor to maintain perfection without reinscription because reinscription would have violated the stay.)

[58] 2 Collier on Bankruptcy, ¶ 108.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted).

[59] *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778 (1992). *See also Matter of T-H New Orleans Ltd. Partnership*, 116 F.3d 790, 798 (5th Cir. 1997).