UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                    CASE NO.

**800 BOURBON STREET, LLC**                                              **14-12770**
                                                                          SECTION A
DEBTOR                                                                    CHAPTER 11


**800 BOURBON STREET, LLC**                                              ADVERSARY NO.

PLAINTIFF                                                                 **15-1052**

VERSUS

**BAY BRIDGE BUILDING LIMITED COMPANY, LLC**

DEFENDANT

### <u>REASONS FOR DECISION</u>

The Motion to Reconsider and Amend Judgment ("Motion to Reconsider") filed by 800 Bourbon Street, L.L.C. ("800 Bourbon") came up for hearing on March 4, 2016.[1]  Following the hearing, the record remained open for the limited purpose of allowing the parties to submit transcript excerpts of the continued 2004 Examination of Johnny Chisholm as well as the subpoena response by Julian MacQueen to the Didriksen Law Firm dated September 23, 2014.  The parties also requested and were granted a period within which to submit supplemental briefs.  All additional evidence and briefing were submitted by April 29, 2016, after which the Court took the matter under advisement.

---

[1] P-52.

1

## I. Findings of Fact

On June 11, 2008, 800 Bourbon Street filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code ("2008 Bankruptcy").[2]  Bay Bridge Building Limited Company, LLC ("Bay Bridge") filed a secured claim in the amount of $1,360,571.00 ("2008 claim") in 800 Bourbon's case.[3]  The Court confirmed 800 Bourbon's Plan of Reorganization in 2009 ("2009 Plan").  The 2009 Plan provides the following treatment for Bay Bridge's 2008 claim:

> Guarantor, John L. Chisholm, Jr., and Chisholm Properties Circuit Events, LLC,[4] assume full payment of all obligations of the Debtor to this Class Claimant, ...
>
> To the extent this Class Claimant has an allowed secured claim, the Collateral Mortgage, Collateral Mortgage Note, Hand Note, and/or auxiliary Promissory Notes, properly paraphed, shall remain as collateral security, but "in rem" only.  Amended collateral security documents and notes will be prepared, executed and recorded in the Parish of Orleans if requested by this Class Claimant. ...[5]

No objection was filed to Bay Bridge's 2008 Claim, and the 2008 Bankruptcy was closed on August 17, 2011.

On October 15, 2014,  800 Bourbon  filed a second Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code.[6]  This time Bay Bridge was listed as an unsecured creditor with

---

[2] Case no. 08-11322.

[3] Case no. 08-11322, Proof of Claim 1.

[4] Chisholm Properties Circuit Events, LLC, will be referred to as "Circuit Events."

[5] Case no. 08-11322, P-208.

[6] Case no. 14-12770.

the amount of its claim as $0.00.   800 Bourbon did not request that the Court enter an Order setting

a deadline to file proofs of claim pursuant to Bankruptcy Rule 3003.[7]

800 Bourbon and Louisiana Interests, Inc. ("La. Interests")[8]   filed a Joint Disclosure

Statement and Plan of Reorganization proposing an *en globo* sale by court auction of substantially

all their assets.   The auction was scheduled for the date of the confirmation hearing.   The Court

approved the Disclosure Statement for the Second Amended Joint Plan of Reorganization

("Disclosure Statement")[9] on June 17, 2015.[10]  Also on June 17, 2015, the Court granted the Motion

for Sale of Property Free and Clear of Liens which provided procedures for the Court conducted

auction.[11]

On July 15, 2015, Bay Bridge filed Proof of Claim no. 5 in 800 Bourbon's bankruptcy case.

Bay Bridge claimed a debt of  $1,979,886.47 secured by the building located at 800 Bourbon Street.

Bay Bridge's claim is evidenced by four (4) promissory notes signed by Johnny Chisholm on behalf

of 800 Bourbon ("Notes").   Bay Bridge also holds a collateral mortgage note dated April 21, 2005,

secured by a collateral mortgage ("Mortgage") on the property located at 800 Bourbon Street.

---

[7] In a Chapter 11 case, there is no default deadline to file proofs of claim.  Because 800
Bourbon had not previously filed a Motion to Set a Deadline to File Proofs of Claim, the Court's
Order Approving Debtor's Second Amended Joint Disclosure Statement set the deadline to file
proofs of claim as July 15, 2015.  P-176.  As a result, creditors contesting their scheduled status
or amount were required to file a proof of claim no later than July 15, 2015.

[8] Case no. 14-12772.

[9] 14-12270, P-171; 14-12772, P-291.

[10] 14-12770, P-176; 14-12772, P-299.

[11] 14-12770, P-175; 14-12772, P-298.

The Mortgage was signed by Johnny Chisholm and Doyle Yeager. The same Notes and Mortgage formed the basis for Bay Bridge's proof of claim in the 2008 Bankruptcy.

On July 21, 2015, 800 Bourbon filed the instant adversary proceeding objecting to Bay Bridge's proof of claim.

On July 22, 2015, and directly prior to the confirmation hearing, the Court held an auction of substantially all of the assets of 800 Bourbon and La. Interests, including Bay Bridge's collateral. The prevailing bid for $8,175,000.00 was approved by an Order entered on August 3, 2015.[12] On that same date, the Court confirmed the Second Amended Joint Chapter 11 Plan ("Plan").[13] By agreement among Bay Bridge, 800 Bourbon, and La. Interests, the Order approving the sale and the Confirmation Order provided for the release of Bay Bridge's lien on 800 Bourbon's property and the escrow of $1,649,000 of sale proceeds subject to Bay Bridge's lien. The escrow was to be held until further order of the Court.

The Original Complaint filed by 800 Bourbon against Bay Bridge included two (2) claims for relief: 1) Bay Bridge's lien should be avoided pursuant to 11 U.S.C. § 544; and 2) Bay Bridge's claim was unenforceable against 800 Bourbon because of the 2009 Plan.[14] 800 Bourbon reserved the right to amend the Complaint to assert other causes of action.

800 Bourbon subsequently filed an Amended Complaint asserting two (2) additional causes of action : 1) Bay Bridge's lien should be avoided due to untimely reinscription; and 2) the attorney's

---

[12] 14-12770, P-242; 14-12772, P-366.

[13] 14-12770, P-240; 14-12772, P-361.

[14] P-1.

4

fees claimed by Bay Bridge were unsubstantiated and excessive.[15]   Again, 800 Bourbon reserved

its right to further amend its Complaint.   Bay Bridge subsequently waived its claim for attorney's

fees, so that claim became moot.  An Answer was filed by Bay Bridge on August 21, 2015.[16]  800

Bourbon has not requested further amendment of the Complaint.

Pursuant to Local Rule 7016-1, once all answers have been filed in an adversary proceeding,

the Court schedules a pretrial conference for the purpose of setting deadlines for discovery; the filing

and consideration of dispositive motions; and a trial date.  On September 1, 2015, 800 Bourbon filed

a Motion for Summary Judgment ("MSJ").[17]   The MSJ asserted that Bay Bridge's lien was

avoidable, as a matter of law,  pursuant to 11 U.S.C. §544.   800 Bourbon prayed: "that summary

judgment be entered in [its favor] avoiding any liens purportedly held by Bay Bridge, disallowing

its claim, and for such other and further legal and equitable relief to which [it] may be justly

entitled."[18]

Bay Bridge  opposed the MSJ and filed a Cross Motion for Summary Judgment ("Cross

Motion").[19]  Bay Bridge sought judgment, as a matter of law, that it "had a valid, perfected lien on

the property at 800 Bourbon Street on the filing date, and ... on the proceeds of the sale."[20]

---

[15] P-7.

[16] P-9.

[17] P-10.

[18] P-10, p. 9.

[19] P-17.

[20] P-17, p. 16.

Bay Bridge further prayed that 800 Bourbon's Complaint be "dismissed, and the funds escrowed for Bay Bridge's claim released."[21]

800 Bourbon and Bay Bridge  noticed the respective MSJ and Cross Motion for hearing on September 29, 2015, a motion day.[22]   However, Section IV of the "Section A Procedures" posted on the Court's website provides that motions for summary judgment are not to be heard on motion day.   Instead,  a party moving for summary judgment is to immediately contact the Court for a special setting. The Court scheduled a pre-hearing conference to determine a special setting date and any necessary pre-hearing deadlines.

At  the conference on September 28, 2015, 800 Bourbon represented that only limited discovery was required to address the issues presented by the MSJ and Cross Motion.  It further asserted that full discovery would be a waste of time and money.  As a result of the conference, the Court barred any discovery pending hearing on the MSJ and Cross Motion with one exception.  By agreement between the parties, Bay Bridge was ordered to provide to 800 Bourbon:

> [D]ocuments showing to which account the funds loaned by Bay Bridge were initially transferred or deposited, a copy of the note, a copy of the guaranty, and a representation that Chisholm has not been released.[23]

After the response was delivered, the Court set a deadline of October 12, 2015, for 800 Bourbon to file a Motion to Conduct Discovery.[24]

---

[21] *Id.*

[22] P-10, 11.

[23] P-18.

[24] *Id.*

In the interim, 800 Bourbon replied to the Cross Motion opposing its request for relief as premature because "essential facts" to justify its opposition were unavailable due to a need to "review additional documents to be provided by Bay Bridge at the direction of the Court." It further stated, "[U]pon review of such documents, [it would] submit a Declaration pursuant to Rule 56(d) concerning discovery which will be necessary in the event summary judgment is not granted in [its] favor."[25]  800 Bourbon identified the unavailable facts as:

> [A]ll contemporaneous communications between Bay Bridge and the principal obligors - Johnny Chisholm and Properties Circuit Events, LLC as to how the obligations under the promissory notes were treated before and after confirmation of the 2009 Plan. The Debtor has informally requested certain of these documents from Bay Bridge, but, at this time, has not received them.[26]

800 Bourbon also made the following responses to the Cross Motion:

> 1) 800 Bourbon never received the alleged loan proceeds;
>
> 2) Bay Bridge failed to produce evidence of the hand note; and
>
> 3) Bay Bridge's security rights were extinguished because the principal obligation was extinguished.

On October 12, 2015, 800 Bourbon filed a Motion for Expedited Hearing on a Motion to Conduct Discovery.[27]   The request for expedited hearing was denied.[28]

---

[25] P-19, n. 1.

[26] *Id.* at p. 8-9.

[27] P- 21 and 22.

[28] P-26.

The MSJ and Cross Motion were heard by this Court on October 14, 2015, and taken under advisement.  On November 20, 2015, this Court entered a ruling granting the Cross Motion of Bay Bridge and denying the MSJ of 800 Bourbon ("Judgment").

800 Bourbon filed its first Motion for Reconsideration on December 4, 2015.[29]  The Motion alleged that new evidence, not previously available to 800 Bourbon, had been discovered after the hearings on the MSJ and Cross Motion.  Specifically, 800 Bourbon alleged that Chisholm, who is both the member that signed the Notes and Mortgage and a guarantor of the Bay Bridge debt, testified under oath that he and Bay Bridge had reached a settlement reducing the amounts due to $750,000.00.[30]

The Court granted the Motion for Reconsideration because (1) it had stayed any formal discovery pending the hearing on the MSJ and Cross Motion; (2) ordered the production of minimal documentation based on the representations of Bay Bridge; and (3) 800 Bourbon filed a timely Motion for Discovery based on the insufficiency of the documentation submitted.  As a result,  the portions of the Judgment purporting to render final judgment on the amount owed were vacated.  Pursuant to this ruling, the Court reserved for trial on the merits one issue: whether or not an alleged reduction, modification, or release of Chisholm  was previously granted by Bay Bridge and affected the sums due to it by 800 Bourbon.  The Order granting reconsideration was entered on January 12, 2016.[31]

---

[29] P-31.

[30]  The testimony occurred during the 11 U.S.C. §341(a) meeting of creditors for Chisholm, in his personal bankruptcy case pending in the U.S. Bankruptcy Court for the Northern District of Florida.

[31] P-42.

Following this ruling, 800 Bourbon's attorneys withdrew as counsel because 800 Bourbon suggested that a malpractice action might be filed against them.[32]

On January 26, 2016, 800 Bourbon filed a Motion to Enroll New Counsel as well as this second Motion to Reconsider.[33]  The second Motion to Reconsider alleges that Chisholm and Julian MacQueen, principal of Bay Bridge, have conspired to commit fraud.  800 Bourbon then filed a Supplemental Memorandum in Support of Its Motion to Reconsider.[34]  The Supplemental Memorandum alleges further evidence of fraud.

Ms. Bobby Warner, Mr. Johnny Chisholm, and Mr. Doyle Yeager are the three (3) members of 800 Bourbon.  Mr. Yeager and Ms. Warner authorized the voluntary filing of the bankruptcy petition by 800 Bourbon.  Further, Mr. Yeager and Ms. Warner have been represented by counsel and have participated in the reorganizational efforts of 800 Bourbon.  Ms. Warner has acted as the managing member during the administration of the case.

On September 23, 2014, Julian MacQueen responded to a subpoena to produce documents issued by Ms. Warner's counsel, Erin B. Saucier of the Didriksen Law Firm.[35]  The response includes the following cancelled checks:

---

[32] P-44.

[33] P–49 and 52.

[34] P-66.

[35] Exh. 13.

1.      Check dated May 10, 2006, by Bay Bridge to the order of 800 Bourbon and Johnny Chisholm in the amount of $110,000.00.

2.      Check dated May 31, 2006, by Julian and Kim MacQueen to the order of Johnny Chisholm and Circuit Events in the amount of $90,000.00 with the memo "loan." The deposit slip shows that Circuit Events deposited it on May 31, 2006.

3.      Check dated July 18, 2005, by Circuit Events to the order of Bay Bridge in the amount of $300,000.00.

4.      Check dated December 5, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

5.      Check dated November 30, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

6.      Check dated November 21, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

7.      Check dated November 4, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

8.      Check dated October 19, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

9.      Check dated October 26, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

10.     Check dated October 10, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

11.     Check dated October 3, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

12.     Check dated September 26, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

13.     Check dated September 16, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

14.     Check dated September 7, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

15. Check dated August 31, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

16. Check dated August 19, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

17. Check dated August 12, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

18. Check dated August 5, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

19. Check dated August 8, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

20. Check dated July 22, 2005, by Circuit Events to the order of Bay Bridge in the amount of $5,000.00.

## II.  Conclusions of Law

800 Bourbon seeks 1) to alter or amend the Judgment pursuant to F.R.C.P. 59(e);[36] 2) relief from the Judgment pursuant to F.R.C.P. 60(b)(3);[37] and 3) sanctions for discovery abuses pursuant to F.R.C.P. 37(c)(1).[38]

### A. Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e)

Motions for reconsideration filed no later than fourteen (14) days after entry of judgment are treated as Motions for New Trial or to Alter or Amend a Judgment pursuant to F.R.B.P. 9023.  800 Bourbon timely filed its first Motion for Reconsideration.  It filed its Second Motion to Reconsider fourteen (14) days after entry of the Order granting the first Motion for Reconsideration.  Through

---

[36] F.R.C.P. 59 is made applicable to this proceeding by F.R.B.P. 9023.

[37] F.R.C.P. 60 is made applicable to this proceeding by F.R.B.P. 9024.

[38] F.R.C.P. 37 is made applicable to this proceeding by F.R.B.P. 7037.

a request to reconsider the Order granting the first Motion for Reconsideration, 800 Bourbon seeks another bite at the almost eaten apple.

800 Bourbon argues that this Court must "strike the proper balance between two competing imperatives: 1) finality, and 2) the need to render just decisions on the basis of all the facts."[39]

Once Bay Bridge filed its Cross Motion, it was incumbent upon 800 Bourbon to raise any and all objections to summary judgment. The United States Supreme Court has found:

> [A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

A motion to reconsider, alter, or amend a judgment:

> [I]s not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.[40]

Although FRCP 59(e) does not contain any factors for a court to consider, the Fifth Circuit has held for such a motion to prevail, it must:

> [C]learly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.[41]

---

[39] P-66 (citations omitted).

[40] *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted).

[41] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

12

It is an inarguable fact that 800 Bourbon's Complaint and Amended Complaint fail to allege any claim of fraud against Bay Bridge.  800 Bourbon alleges for the first time in this *second* Motion to Reconsider that Chisholm and MacQueen conspired to commit fraud.  This is a new legal theory that was not raised in the Complaint, Amended Complaint, the MSJ, or Reply to the Cross Motion.

800 Bourbon alleges in its Motion to Reconsider, that 1) it informally asserted a claim of fraud in its pleadings and evidence; and 2) it was surprised by Bay Bridge's proof of claim.  As a result, it is not arguing a new theory of recovery, or if it is, it should be excused.

### 1.  800 Bourbon Did Not Assert an Informal Fraud Objection to Bay Bridge's Claim

Although 800 Bourbon did not use the specific word "fraud,"it contends that it informally alleged a fraud claim against Bay Bridge: arguing that because it produced evidence of fraud in an exhibit to its Motion to Conduct Discovery, it has asserted a claim based in fraud against Bay Bridge.

800 Bourbon appears to assert a claim that its pleadings should conform to the evidence presented pursuant to F.R.C.P. 15(b)(2).[42]   F.R.C.P. 15(b)(2) provides that if an issue is tried by express or implied consent, the Court must treat it as if the issue was raised in the pleadings.

Rule 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move–at any time, even after judgment –to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

---

[42] F.R.C.P. 15 is made applicable to this proceeding by F.R.B.P. 7015.

For an amendment to be allowed, the parties must have received "actual notice of an unpleaded issue and [ ] been given an adequate opportunity to cure any surprise that might result from the change in the pleadings."[43]   For an issue to have been impliedly litigated,

> [I]t must be tried with the consent of the parties, or if the evidence is challenged, the objecting party must be given an opportunity to demonstrate that the introduction of the evidence at trial is so prejudicial that the detrimental effect cannot be cured by a continuance or the imposition of some other condition on allowing the amendment.[44]

800 Bourbon argues that Ms. Warner's Declaration attached to 800 Bourbon's Motion to Conduct Discovery was evidence of its intention to plead a fraud claim. The Declaration, while of record, was attached to a Motion to Conduct Discovery that was not considered nor admitted until heard on January 5, 2016.[45]   This was after the Cross Motion was granted. As a result, the Declaration cannot form the basis for a ruling under F.R.C.P. 15(b)(2). In addition, the Declaration contains nothing that supports a fraud objection.

In the Declaration, Ms. Warner recites:

> Based upon my knowledge of the relationship between Johnny Chisholm and Julian MacQueen..., I do not believe that Johnny Chisholm in fact owes Bay Bridge the amount Bay Bridge is alleging based upon the following facts. First, Chisholm claimed that he and Julian MacQueen ...engaged in an informal agreement in connection with a property acquisition whereby Chisholm submitted an offer of the property in Pensacola upon direction of MacQueen, when MacQueen did not want it to be known that he was interested in the property. Second, Chisholm has also claimed an ownership interest in MacQueen's hotel business and may have had other dealings with MacQueen and Bay Bridge which would impact the amount of any claim by Bay Bridge against Chisholm.

---

[43]   6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1491 at 7 (2010).

[44]   *Id.*

[45]   P-42

14

The Declaration merely states that prior dealings between Chisholm and Julian MacQueen, principal of Bay Bridge, might exist.  It fails to indicate that the dealings were fraudulent.  Nor does it detail any allegedly fraudulent conduct by time, date, or place.  The Declaration merely poses a theory that due to prior business dealings, the amount of the debt owed to Bay Bridge may not be as claimed.  No evidence of this theory was offered at the hearing on the Cross Motion.  Because the Declaration was not offered into evidence at the hearing and in any event does  not set forth an allegation of fraud, it cannot form the basis for a ruling under F.R.C.P. 15(b)(2).

F.R.C.P. 9(b),  made applicable to this proceeding by F.R.B.P. 7009, provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the Fifth Circuit, pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."[46]  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[47] "Directly put, the who what, when, and where must be laid out *before* access to the discovery process is granted."[48]   The reason for the rule of particularity is to provide "fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."[49]

---

[46] *Williams v. WMX Technologies, Inc.* 112 F.3d 175, 177 (5th Cir. 1997) (citations omitted).

[47] *Id.* at 177-178 (citation omitted).

[48] *Id.* at 178.

[49] *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

15

800 Bourbon analogized Ms. Warner to a bankruptcy trustee and cited *Birnberg v. Rancho La Costa, Inc. (In re Reach McClinton & Co., Inc.)*[50] for the proposition that like a bankruptcy trustee, Ms. Warner, as the representative of 800 Bourbon, need not plead fraud with the same level of particularity required of others. In *Birnberg*, the Court found that a bankruptcy trustee should be afforded "greater liberality" in pleading because "it is often the Trustee, a third party outsider to the fraudulent transactions, that must plead fraud on second-hand knowledge for the benefit of the estate and all of its creditors."[51]   *Birnberg* is not applicable in this case because Ms. Warner is neither a bankruptcy trustee nor an outsider. She is an owner, the managing member of 800 Bourbon, and was involved in a lawsuit with the offending member on the very same Bay Bridge debt. Rather than a third party outsider, she is the classic insider.[52]

## 2. Surprise

800 Bourbon also contends that the Court should allow it to plead fraud due to surprise because 800 Bourbon was close to a hearing on confirmation when Bay Bridge filed it's proof of claim. As a result, 800 Bourbon claims it "rushed" to file the Complaint objecting to the claim.

Bay Bridge's claim was reorganized in the 2009 Plan. Bay Bridge was also scheduled as a creditor in this case. For these reasons, 800 Bourbon cannot credibly argue it was surprised by Bay Bridge's claim.

---

[50] *Birnberg v. Rancho La Costa, Inc. (In re Reach McClinton & Co., Inc.)*, 62 B.R. 978 (Bankr.D.N.J. 1986) (rev'd on other grounds).

[51] *Id.* at 981 (quoting *In re O.P.M. Leasing Services, Inc.*, 32 B.R. 199 (Bankr.S.D.N.Y. 1983).

[52] The Court also notes that *Birnberg* is not binding authority, and it is unclear whether the Fifth Circuit would apply the same rule.

16

The claim was timely filed.  Any rush to object to the proof of claim was a result of 800 Bourbon's own making.[53]   Nevertheless, a "rush" to file its Complaint is insufficient grounds to upset a judgment.  800 Bourbon had ample time after the filing of its Complaint to amend, conduct discovery, and if it discovered fraud, properly plead and pursue the claim. It did not articulate a claim of fraud in its pleadings and the evidence submitted does not support a claim for fraud.

## 2.  Reconsideration Based on "Newly Discovered" Evidence

### a.  The Standard

800 Bourbon does not complain of a manifest error of law or fact attributable to the Judgment. Instead, it points to newly discovered evidence of Bay Bridge's fraud: 1) a check that its representative, Bobby Warner, obtained by subpoena in 2014; and 2) the 2004 Examination testimony of Chisholm.

In *Templet v. HydroChem Inc.*[54] the Fifth Circuit  found "that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."[55]  800 Bourbon cites the case of *Ford v. Elsbury*[56] for its proposition that the prior availability of evidence is not by itself conclusive.  In *Elsbury* the Fifth Circuit found:

---

[53]  Bay Bridge was treated as an allowed secured creditor owed in excess of $1.300,000.00 in the 2009 Plan.  After filing its second Chapter 11 proceeding, 800 Bourbon scheduled Bay Bridge as an unsecured creditor to whom no amount was due.  This forced Bay Bridge to file a proof of claim or be barred from collection. Since, 800 Bourbon did not request an earlier deadline for filing proofs of claim, the Court set the deadline as July 15, 2015.

[54]  *Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004).

[55]  *Id.* at 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

[56]  *Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994).

In deciding whether to consider late-filed evidence, the district court must strike the proper balance between two competing interests: "the need to bring litigation to an end and the need to render just decisions on the basis of all the facts."[57]

The *Elsbury* Court also provided a non-exhaustive list of relevant considerations:

(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was available to plaintiffs before they responded to the summary judgment motion, and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened.[58]

In order to grant reconsideration, the evidence must be "material and controlling and clearly would have produced a different result if present before the original judgment."[59]

This Court has already granted reconsideration on one issue. 800 Bourbon's new counsel offers additional evidence and even an additional and novel cause of action in a second Motion for Reconsideration. The Court has weighed the competing interests and for the reasons set forth below, finds that this litigation must come to an end.

### b. The Evidence Offered

#### i. The Check Held by Bobby Warner

Following the pre-hearing conference on the MSJ and Cross Motion, Bay Bridge was ordered to produce evidence of its advances to 800 Bourbon. In response, Bay Bridge alleged that

---

[57] *Id.* at 937 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.* 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)).

[58] *Id.* at 937.

[59] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003) (citing *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 999 (5th Cir. 2001)). In *Goldstein*, the mover sought relief from judgment on the basis of newly discovered evidence pursuant to F.R.C.P. 60(b)(2), which applies when evidence could not have been reasonably be discovered for a timely motion to alter or amend pursuant to F.R.C.P. 59(e) to be filed. Other than timing, the relevant considerations are the same.

documentation evidencing the advances was no longer available.  Following the entry of Judgment,

800 Bourbon introduced copies of two (2) of the advances by Bay Bridge  found through discovery

propounded by Bobby Warner against Julian MacQueen some years earlier.[60]   One check was

payable to 800 Bourbon, and the other was payable to Johnny Chisholm and Circuit Events, an entity

owned by Chisholm.

The fact that Circuit Events received the funds generated by the Bay Bridge loan was

acknowledged by the 2009 Plan.[61]  It stated:

> Pursuant to a Proof of Claim filed by Bay Bridge on June 24, 2008, it filed a secured
> claim of $1,360,571.01.
>
> The Collateral Mortgage secured a loan in the principal amount of $1.2 million by
> Bay Bridge in April 2005, a loan in the amount of $110,000 by Bay Bridge in May
> [] 2006, and loan in the amount of $90,000 by Bay Bridge in June []2006.  The loan
> proceeds were received by Chisholm Properties Circuit Events, LLC, not by the
> Debtor. ...
> Pre-petition, payments and credits toward the Bay Bridge loan total $314,931.26.
> Such payments were made by Johnny Chisholm or Chisholm Properties Circuit
> Events, LLC, not by the Debtor. ...
>
> Post-petition, Chisholm Properties Circuit Events, LLC has made payments to Bay
> Bridge from revenues.

The 2009 Plan also provides that all prior payments on the Bay Bridge debt were made by Chisholm

or Circuit Events, not 800 Bourbon.[62]

---

[60] 1) A check dated May 10, 2006, by Bay Bridge to the order of 800 Bourbon and Johnny
Chisholm in the amount of $110,000.00;  2) A check dated May 31, 2006, by Julian and Kim
MacQueen to the order of Johnny Chisholm and Circuit Events in the amount of $90,000.00 with
the memo "loan." Exh. 13.

[61] Case 08-111322, P-208, Exh. 1, Section 5.02, p. 17.

[62] *Id*. at p. 18.

Unable to contest prior knowledge of this fact, 800 Bourbon focuses on one check in the amount of $90,000.00 written by Julian and Kim MacQueen to Chisholm and Circuit Events. 800 Bourbon asserts that the newly discovered inclusion of this check constitutes fraud as the funds were not advanced by Bay Bridge, and by inference, not owed to it.[63]  Because Julian MacQueen is the owner of Bay Bridge, the advance of $90,000.00 hardly appears to provide evidence of fraud; instead, at most, it points to mistake.  Bay Bridge's proof of claim was filed under penalty of perjury and allowed.  As a result, the Court is more inclined to assume there is a logical explanation for this discrepancy:  for example, did Julian MacQueen advance funds on behalf of his corporation?  In any event, the check alone does not establish that a different result would have occurred if it had been admitted into evidence at the hearing on the Cross Motion.

### ii. Testimony of Chisholm

800 Bourbon points to Chisholm's 2004 Examination as newly discovered evidence of fraud. Sometime after confirmation of the most recent plan, Chisholm filed a personal case for voluntary relief under the bankruptcy code.  With this filing, the automatic stay went into effect, complicating, if not wholly preventing, access to Chisholm.  As a result, the deposition of Chisholm (through 2004 examination) could not be completed prior to the hearing on the Motion to Reconsider.[64]  For this reason, the Court allowed the record to remain open so that both parties could submit any relevant evidence obtained from Chisholm.  The evidence was submitted and considered by the Court in this Decision.

---

[63] Exh. 2 and 13.

[64] Chisholm's 2004 Examination was held over two (2) days: February 12, 2016, and March 16, 2016.   The hearing on the Motion to Reconsider was on March 4, 2016.

20

800 Bourbon now alleges that this evidence establishes a claim for fraud against Bay Bridge.

The excerpts from Chisholm's testimony state:

1.   On the mortgage signed in 2005, Chisholm cannot verify Yeager's signature and does not recall when Yeager signed.[65]

2.   Chisholm and Julian MacQueen, Bay Bridge's principal are friends.

3.   As additional consideration for the $1,200,000 loan, Chisholm agreed that once the $1,200,000 note to Bay Bridge was paid in full, Circuit Events would give Bay Bridge 50% of its profits.[66]

800 Bourbon alleges that Circuit Events' future profit participation is evidence that the loan should be recharacterized as equity.  It also alleges that because Chisholm and Julian MacQueen were friends, the terms of the agreement call the arrangement between them into question and, by reference, Bay Bridge's debt.

Chisholm testified that in 2005, Bay Bridge loaned Circuit Events $1,200,000.00 for the production of a music festival or weekend event in Orlando, Florida.  At the time, Chisholm was involved in producing concerts or events but this was larger than any other he had organized. Chisholm anticipated that revenues from the event could repay the loan.

Chisholm freely admitted that he and MacQueen were friends when the loan took place. Nevertheless, the loan was documented with Notes and secured by a Mortgage on 800 Bourbon's property.  At the time, the only other member of 800 Bourbon was Doyle Yeager, and Chisholm testified that Yeager both knew of the loan and signed the Mortgage.  From this testimony, 800 Bourbon argues that Chisholm and Bay Bridge perpetrated a fraud on 800 Bourbon and its members,

---

[65] P-86, Exh. A, pp. 429-430.

[66] *Id*. at 437 and Exh. 13.

21

Yeager and Warner.[67]  In particular it points to the promise of equity in Circuit Events as a "smoking gun."

The Fifth Circuit in *Estate of Mixon v. U.S.*[68] set forth the following factors for determining "debt versus equity":

(1) [T]he names given to the certificates evidencing the indebtedness;

(2) The presence or absence of a fixed maturity date;

(3) The source of payments;

(4) The right to enforce payment of principal and interest;

(5) [P]articipation in management flowing as a result;

(6) [T]he status of the contribution in relation to regular corporate creditors;

(7) [T]he intent of the parties;

(8) "[T]hin or adequate capitalization;

(9) [I]dentity of interest between creditor and stockholder;

(10) [S]ource of interest payments;

(11) [T]he ability of the corporation to obtain loans from outside lending institutions;

(12) [T]he extent to which the advance was used to acquire capital assets; and

(13) [T]he failure of the debtor to repay on the due date or to seek a postponement.

The indebtedness owed to Bay Bridge is evidenced by the Notes and Mortgage.  Prior to 800 Bourbon's 2008 Bankruptcy, Circuit Events repaid Bay Bridge with interest as provided for in the

---

[67] Warner was not a member of 800 Bourbon at the time the loan was made.

[68] *Estate of Mixon v. U.S.*, 464 F .2d 394, 402 (5th Cir. 1972).

22

Notes.  Nevertheless, 800 Bourbon alleges that the provision relating to a transfer of equity calls the characterization of the Notes into question.

Bay Bridge's agreement provides that after full satisfaction of the debt, an equity interest would be transferred.  In the preceding  years, Circuit Events would be wholly owned by Chisholm who would retain all benefits of ownership.  Exactly how 800 Bourbon was defrauded by a future promise to advance equity in Chisholm's company after the repayment of a debt is completely unclear.

While 800 Bourbon makes much of  Chisholm's testimony, it fails to provide any facts or circumstances supported by the testimony that suggest a fraud was conducted against it by Bay Bridge.  That Bay Bridge will receive future equity in Circuit Events *after* the full repayment of its advance is insufficient to establish that a different ruling would have resulted had this information been known. This Motion to Reconsider requires 800 Bourbon to bring forth specific facts supported by evidence, newly discovered and previously unavailable, to justify the extraordinary relief it is requesting.  Instead, it brings more undocumented and unsupported suspicions and suppositions based on a new legal theory that is, as of yet, undeveloped.  The testimony excerpts simply do not show evidence of fraud nor do they provide even a color of a claim.

### iii.  The Yeager Affidavit

800 Bourbon filed the MSJ and picked its day to argue.  Given this history, the Court was generous in allowing the record to remain open even for the limited purpose that it did.  Incredibly, 800 Bourbon seeks to expand this grant post-hearing.

23

After the conclusion of the hearing on the second Motion for Reconsideration, 800 Bourbon asked the Court to admit into evidence an affidavit of Doyle Yeager, which the Court refused.[69] On the deadline to submit limited additional evidence, 800 Bourbon again asked this Court to admit Mr. Yeager's affidavit.[70]  It was again denied.

Mr. Yeager, a principal of 800 Bourbon,  has been involved in this bankruptcy case from its filing.   He was a signatory to the resolution by 800 Bourbon to file a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code;[71] retained personal counsel to monitor all proceedings; filed numerous pleadings during the administration of the case; and participated in the negotiations with Bay Bridge leading up to confirmation.  The Court can safely conclude that Mr. Yeager was and remained available to 800 Bourbon throughout this matter, and therefore, his testimony by affidavit is neither newly discovered nor previously unavailable to 800 Bourbon.  As a result, his affidavit simply comes too late, and will not be admitted.

At the hearing on the Motion to Reconsider, 800 Bourbon also offered into evidence Yeager's Ex Parte Application to Reopen the 2008 Bankruptcy for the proposition that Yeager alleged there were fraudulent documents bearing his signature.[72]  The Ex Parte Application to Reopen does not refer to the Bay Bridge loan, so it is irrelevant to this proceeding.

---

[69] P-74 and 76.

[70] P-86.

[71] Case 14-12770, P-1.

[72] Exh. 12.

### c.  Availability of Evidence

Warner, Yeager, and Chisholm were engaged in many prepetition lawsuits between each other and the creditors of 800 Bourbon and La. Interests.  In connection with these suits, Warner's counsel conducted discovery and obtained copies of checks representing the advances made by Bay Bridge.[73] Despite both Warner and her private counsel's daily involvement in case administration and this adversary in particular, a copy of the $90,000.00 check was not forwarded to 800 Bourbon's counsel.  Nevertheless, Warner cannot claim she did not know of its existence; having received it in discovery, she knew of its existence and the information it imparted.

800 Bourbon contends that because Warner's counsel did not bring the subpoenaed documents to its or the Court's attention, he must have forgotten about them.  800 Bourbon suggests that this excuses his failure to disclose.

In Louisiana, knowledge of an attorney is imputed to his or her client.[74]  Warner and her counsel were engaged in litigation spanning many years over the conduct of Chisholm and its effect on 800 Bourbon and La. Interests.[75]

---

[73] Exh. 13.

[74] *Stevison v. Charles St. Dizier, Ltd*., 9 So.3d 978, 981 (La.App. 3 Cir. 2009) (citations omitted). "[K]nowledge of an officer of a corporation, obtained in conduct of its business, is imputable to the corporation." *First Nat. Bank of Jefferson Parish v. Dazet*, 656 So.2d 1110, 1114 (La.App. 5 Cir. 1995) (citing *Gen. Motors Acceptance Corp. v. Crain Chevrolet-Olds-Pontiac, Inc*., 595 So.2d 346 (La.App. 2 Cir. 1992); *see also Robert v. Robert Management Co., LLC*, 164 So.3d 922, 2014-0822 (La.App. 4 Cir. 2/11/15)  (knowledge by a member of an LLC of a claim for breach of fiduciary duty imputed to the LLC).

[75] *Chisholm v. Yeager, et al*., case no. 13-6325, Civil District Court for the Parish of Orleans.

25

800 Bourbon cites *Creager v. Womack*,[76] which quoted *D'Aubin v. Mauroner-Craddock, Inc.,* for the proposition that:

> Under Louisiana law "the general rule is that the private acts and knowledge of a chairman or director of a corporation are not imputable to it, except with respect to matters within their general authority to act for the corporation or when they are indeed acting for the corporation.[77]

In *Creager*, the plaintiffs were minority shareholders of Louisiana Commercial Bank ("LCB"), and Creager, Sr. and McDonald were also members of LCB's board. The plaintiffs alleged that Mr. Womack, who was the Chairman of the Board of LCB, fraudulently induced them to sell their LCB stock to him for a price below market value. LCB filed a Motion for Summary Judgment that Mr. Womack's acts could not be imputed to it. The Court found that the defendant's acts "were unrelated to his function as a director of LCB" and granted summary judgment.

In *D'Aubin*, Mr. D'Aubin borrowed funds from Royal American Life Insurance Co. ("Royal") to build a home using Mauroner-Craddock, Inc. ("MC") as the contractor. Royal advanced funds to MC, but MC did not use the funds to pay construction debts. This resulted in liens being placed on D'Aubin's property. D'Aubin filed suit against Royal contending that Royal:

> through its officer, Rolfe McCollister, assumed control for [MC] of the flow of and payment from the construction firm's interim financing proceedings, and Royal [ ] permitted diversion of $7,000 of these funds to pay an unsecured debt due to McCollister's law firm.[78]

---

[76] *Creager v. Womack*, 1987 WL 5614, at *1 (E.D.La. 1987), citing *D'Aubin v. Mauroner-Craddock, Inc*., 263 So.2d 317, 328 (La. 1972).

[77] *Id.*

[78] *D'Aubin*, 263 So.2d at 319.

McCollister's law firm also represented Royal, and his assistant, Stephens, handled the MC account and co-signed all related checks.  D'Aubin contended that Royal was liable for the funds given to MC but diverted elsewhere.

The Court opined that if McCollister supervised the MC  account on behalf of Royal, Royal breached its duty to D'Aubin.  However, the Court found that McCollister's firm only represented Royal in drafting the construction loan agreement. Therefore, Royal could not "be charged with McCollister's knowledge acquired or acts done in his private capacity unrelated to his function as chairman of [Royal's] board."[79]

Warner's knowledge is  attributable to 800 Bourbon because she was both its managing member and the party responsible for directing the litigation against Bay Bridge. Warner obtained knowledge relevant to her representation of 800 Bourbon, and as its officer and the supervisor of its litigation, that knowledge can be imputed to 800 Bourbon.

### d.  Other Factors

The reason for 800 Bourbon's failure to discover, present, or plead the relevancy of evidence as a fraud claim is an additional factor to consider under F.R.C.P. 59.  In this case, the "newly" discovered evidence was available to 800 Bourbon prior to the hearing on the Cross Motion.  The fact that 800 Bourbon wants to recharacterize its importance or content in this second Motion to Reconsider does not make it "newly" discovered.

Further, the evidence it offers is not compelling as explained above.  Nor does it establish that the Judgment rendered by this Court would differ had this claim been made prior to its entry. In summary, the evidence indicates that while Ms. Warner and Mr. Yeager claim no knowledge of

---

[79] *Id.* at 322.

Chisholm's actions and dispute that they gave any him authority to bind the company to Bay Bridge,[80] they have failed to provide any evidence that Bay Bridge was complicit with Chisholm. 800 Bourbon has already filed suit against Chisholm and attached approximately $1,000,000.00 in proceeds payable to him from which it may be compensated, if successful. Its "claim" against Bay Bridge is speculative at best. For this reason, the Court concludes that 800 Bourbon has not been unfairly prejudiced by its failure to present or plead its claim of fraud.

### B.  Motion for Relief from Judgment Pursuant to F.R.C.P. 60

800 Bourbon alleges reconsideration based on F.R.C.P. 60(b)(3),[81] which provides that relief from judgment is available when a fraud is practiced on the court or the losing party to a judgment. 800 Bourbon avers that Bay Bridge's conduct prevented it from fully and fairly presenting its case or defense. It argues that the withholding of information, specifically copies of the cancelled checks evidencing advances to third parties, constitutes a fraud on it and the Court.

On September 29, 2015, this Court ordered:

> Bay Bridge to provide 800 Bourbon with documents showing to which account the funds loaned by Bay Bridge were initially transferred or deposited, a copy of the note, a copy of the guaranty, and a representation that Chisholm had not been released.[82]

In response, Bay Bridge's counsel sent a letter stating that "Bay Bridge no longer has cancelled checks or other evidence of the disbursal of the loaned funds in 2005."[83] Attached to Bay

---

[80] They have separately sued Chisholm in fraud and for breach of duty, attaching all distributions available to him from the sales conducted in 800 Bourbon and La Interests' estates.

[81] F.R.C.P. 60 is made applicable to this proceeding by F.R.B.P. 9024.

[82] P-18.

[83] Exh. 10.

Bridge's letter is the Affidavit of Jack Work[84] stating that all of its 2005 records were destroyed on December 31, 2012.  800 Bourbon asserts that this representation is false because in 2014, a subpoena return to Ms. Warner produced canceled checks evidencing some of its advances.  Even if true, this does not establish that the records existed in September 2015 and were available to produce.  In any event, the evidence was in Ms. Warner's possession and confirmed a fact that 800 Bourbon already knew: the loan proceeds were not received by 800 Bourbon.  Because this fact was not contested by Bay Bridge, no harm came to 800 Bourbon as a result of this lapse, if in fact one occurred.

800 Bourbon argues that it hinted at a collusion between Bay Bridge and Chisholm in the Declaration of Ms. Warner attached to 800 Bourbon's Motion to Conduct Discovery filed prior to the hearing on the MSJ and Cross Motion.[85]  It further argues that had Bay Bridge produced a copy of the $90,000.00 check in discovery, it would have likely amended its Complaint.

As previously found, the Declaration states that prior dealings between Chisholm and Julian MacQueen might exist.  It fails to indicate that the dealings were fraudulent.  Nor does it detail any allegedly fraudulent conduct by time, date, or place.  The Declaration poses a theory that due to prior business dealings, the amount of the debt owed may not be as claimed.  As the Court has already granted reconsideration on the amount of the claim, this is not an issue to be addressed by this Motion to Reconsider.

---

[84] Bay Bridge is an affiliate of Innisfree Hotels, Inc., and  Jack Work is the Controller of Innisfree Hotels, Inc.

[85] P-21, Exh. 3.

29

Whether or not Bay Bridge had the copies of the canceled checks in its files or lost the ability to reproduce them between the filing of its proof of claim and the hearing on the Cross Motion cannot be determined based on the record.   However, what is clear is that 800 Bourbon had access to this information without relying on Bay Bridge's production.   In addition, 800 Bourbon knew that no deposits from Bay Bridge were on its own books, and the 2009 Plan specified where the funds were deposited.   800 Bourbon's failures simply do not justify its claim of fraud on the Court.

### C.  Motion for Relief Pursuant to F.R.C.P. 37

800 Bourbon seeks reconsideration as a sanction for what it characterizes as discovery abuses for failure to disclose or supplement discovery.   F.R.C.P. 37(c)(1), made applicable to this proceeding by F.R.B.P. 7037, provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

In order to carry its request for sanctions, 800 Bourbon must establish that Bay Bridge withheld discoverable information that hampered 800 Bourbon's ability to respond to the Cross Motion. Having previously concluded that it has failed to meet its burden of proof, the  Court declines to impose the requested sanction.

### III. Conclusion

That new counsel has thought of a new legal theory is not grounds for reconsideration.[86] For the foregoing reasons, the Motion to Reconsider filed by 800 Bourbon is denied.  A separate Order will be entered in accord with these Reasons.

New Orleans, Louisiana, September 7, 2016.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[86] *See U.S. v. Barnes*, 2012 WL 3194419 (M.D.Fla. 2012) (reconsideration denied when new legal theory by new counsel could have been raised before the judgment). At best, 800 Bourbon's fraud claim is mere theory without support or definition.