UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **800 BOURBON STREET, L.L.C.** | **14-12770** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |

| | |
|---|---|
| **800 BOURBON STREET, L.L.C.** | ADVERSARY NO. |
| PLAINTIFF | **15-1052** |
| VERSUS | |
| **BAY BRIDGE BUILDING LIMITED COMPANY, L.L.C.** | |
| DEFENDANT | |

## <u>MEMORANDUM OPINION</u>

Trial in the above-captioned adversary proceeding was held on June 22 and 23, 2017. At the conclusion of trial, the Court granted the parties time to file simultaneous briefs. After the filing of briefs on September 1, 2017, the Court took the matter under advisement.

## I. Background

800 Bourbon Street, L.L.C. ("800 Bourbon") is a closely held company. In 2005, Johnny Chisholm ("Chisholm") and Doyle Yeager were its sole members. In the spring of that year, Chisholm had the opportunity to purchase the name and production rights to a series of events mounted in Orlando, FL every June ("Gay Days"). In April of 2005, Chisholm approached Bay Bridge Building Limited Company, L.L.C. ("Bay Bridge") to finance the purchase. Bay Bridge agreed. The purchaser was Chisholm's company, Chisholm Properties Circuit Events, L.L.C. ("Circuit Events"). However, because Circuit Events had no assets to secure the loan, Chisholm

offered 800 Bourbon as the borrower, and 800 Bourbon's real property in the French Quarter of New Orleans as collateral.

After purchasing Gay Days, Circuit Events still needed cash to market and produce the event. It again turned to Bay Bridge, and Bay Bridge issued a $200,000 loan, made by 800 Bourbon, for this purpose.

On July 18, 2005, Circuit Events made a $300,000.00 payment to Bay Bridge on the loans. At the time, both the $200,000 loan and a $400,000 installment on the $1,200,000.00 loan were past due. Bay Bridge applied the payment to the $200,000.00 loan to fully satisfy it and used the remainder to reduce the balance on the $1,200,000.00 debt. Throughout 2005, Circuit Events continued to make payments on the debt. By the end of December 2005, an additional $300,000.00 had been paid. All of these payments were applied to the $1,200,000.00 loan. By the end of 2005, Circuit Events had paid $600,000.00 to Bay Bridge but depending on how the payments should have been applied, past due amounts remained on one or both notes.

In May of 2006, Bay Bridge loaned Circuit Events an additional $200,000.00 represented by two (2) notes: one in the amount of $110,000 dated May 10, 2006, and a second in the amount of $90,000.00 dated May 31, 2006. Both notes were made by 800 Bourbon and guaranteed by Chisholm.

According to Chisholm's testimony, a series of unfortunate events caused Gay Days to be less successful than he anticipated. Weather and a national financial downturn conspired to reduce attendance and ticket sales. As a result, Circuit Events was unable to make the required payments owed under the notes. When Bay Bridge elected to enforce collection, 800 Bourbon filed for bankruptcy protection the first time.

2

In 2009, 800 Bourbon confirmed a plan of reorganization.  Contained within the plan were negotiated repayment terms for the Bay Bridge debt.

The subject of this litigation is 1) whether or not Bay Bridge properly applied the single $300,00.00 payment in July of 2005 and 2) whether or not the $200,000.00, $110,000.00, and $90,000.00 loans are secured by the Collateral Mortgage and Collateral Mortgage Note.

## II.  Findings of Fact

In 2005, Chisholm was the sole owner of Circuit Events and 800 Bourbon had two (2) members:  Chisholm and Doyle Yeager.  Julian MacQueen ("MacQueen") is the principal of Bay Bridge.

In April 2005, Circuit Events purchased the rights to Gay Days for $1,200,000.[1]  To fund this purchase, 800 Bourbon executed a Promissory Note in the amount of $1,200,000, with interest at the rate of prime plus 1%, payable in three (3) installments of $400,000 on June 15, 2005; June 15, 2006; and all remaining amounts on June 15, 2007 ("$1.2M Note").[2]  800 Bourbon also executed a Collateral Mortgage and Collateral Mortgage Note dated April 21, 2005, in favor of Bay Bridge in the amount of $2,000,000.00 encumbering 800 Bourbon's property as collateral.[3]  The Collateral Mortgage was signed by Chisholm.[4]

---

[1] Exh. 27-3.

[2] *Id.* at p. 00924.  The payments were scheduled to be made after the weekend of events each year, so they could be paid from profits.

[3] Exh. 27-2-A, p. 00913.

[4] Johnny Chisholm and Doyle Yeager represented that Johnny Chisholm had authority to sign on behalf of 800 Bourbon.  *Id.* at p. 00919.

3

Circuit Events later agreed that as additional consideration and after the $1.2M Note was fully paid, Circuit Events would pay Bay Bridge 50% of its profits.[5]

On May 31, 2005, Bay Bridge advanced Circuit Events $200,000 for operating expenses. The loan was evidenced by a promissory note payable by 800 Bourbon in the face amount of $200,000, bearing interest at the rate of prime plus 5% with a maturity date of June 15, 2005 ("$200K Note").[6]  The $200K Note was unsecured.

Circuit Events made a payment of $300,000 to Bay Bridge on July 18, 2005.[7] Bay Bridge applied this payment to pay off the $200K Note in full with interest and a late fee in the total amount of $212,953.42. The residual amount, $87,046.58, was applied to the $1.2M Note.[8]

On May 10, 2006, Bay Bridge advanced Circuit Events an additional $110,000 for operating expenses.  The loan was evidenced by a promissory note payable by 800 Bourbon in the face amount of $110,000, bearing interest at the rate of prime plus 5% with a maturity date of June 15, 2006 ("$110K Note").[9]

On May 31, 2006, Bay Bridge made another short term advance to Circuit Events for operating expenses.  Again, 800 Bourbon signed a promissory note in the amount of $90,000, plus interest at the rate of prime plus 5% with a maturity date of May 31, 2006 ("$90K Note").

---

[5] Exh. 27-23, p. 01327.

[6] *Id.* at p. 00925.

[7] Exh. 12.

[8] The ledger attached to Bay Bridge's Proof of Claim reflects the balance due on the $1.2M Note and additional notes of $110,000 and $90,000.  The ledger shows a payment of $87,046.58 on July 18, 2005. Exh. 27-2-A, p. 00907.

[9] *Id.* at p. 00926.

4

On June 11, 2008, 800 Bourbon  filed a Voluntary Petition for Relief under Chapter 11 of

the Bankruptcy Code ("2008 Case").[10]    Bay Bridge filed a secured claim in the amount of

$1,360,571.01 ("2008 Claim") in 800 Bourbon's case.[11]   The Court confirmed 800 Bourbon's Plan

of Reorganization in 2009 ("2009 Plan").[12]  The 2009 Plan provides the following treatment for Bay

Bridge's 2008 Claim:

> Bay Bridge is the holder and possessor of a Collateral Mortgage and Collateral
> Mortgage Note in the amount of $2,000,000.00, dated April 21, 2005 ... duly
> executed by Debtor and John L. Chisholm, Jr., as guarantor.
>
> *                      *                      *
>
> The Collateral Mortgage secured a loan in the principal amount of $1.2 million by
> Bay Bridge in April, 2005, a loan in the amount to $110,000 by Bay Bridge in May,
> 2006, and loan in the amount of $90,000 by Bay Bridge in June, 2006.  The loan
> proceeds were received by the Chisholm Properties Circuit Events, LLC, not by the
> Debtor.  The loans are evidenced by the following Promissory Notes (hand notes)
> payable to Bay Bridge and signed by the Debtor and Johnny Chisholm as guarantor:
> i) a Promissory Note in the amount of $1.2 million dated April, 2005, ...; ii) a
> Promissory Note in the sum of $200,000 dated May 31, 2005 and payable on June
> 15, 2005; iii) a Promissory Note in the sum of $110,000 and payable on June 15,
>
> 2006; iv) a Promissory Note in the sum of $90,000 dated and payable on May 31,
> 2006.
>
> *                      *                      *
>
> Guarantor, John L. Chisholm, Jr., and Chisholm Properties Circuit Events, LLC,
> assume full payment of all obligations of the Debtor to this Class Claimant, ...

---

[10] Case no. 08-11322.

[11] Exh. 7.

[12] Case no. 08-11322, P-208.

To the extent this Class Claimant has an allowed secured claim, the Collateral Mortgage, Collateral Mortgage Note, Hand Note, and/or auxiliary Promissory Notes, properly paraphed, shall remain as collateral security, but "in rem" only. Amended collateral security documents and notes will be prepared, executed and recorded in the Parish of Orleans if requested by this Class Claimant. ...[13]

No objection was filed to Bay Bridge's 2008 Claim, and the 2008 Case was closed on August 17, 2011.

On October 15, 2014,  800 Bourbon  filed a second Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code ("2014 Case").[14]   This time Bay Bridge was listed as an unsecured creditor for $0.00.

800 Bourbon and Louisiana Interests, Inc. ("La. Interests")[15]  filed a Joint Disclosure Statement and Plan of Reorganization proposing an *en globo* sale by court auction of substantially all their assets.  The auction was scheduled for the date of the confirmation hearing.  The Court approved the Disclosure Statement for the Second Amended Joint Plan of Reorganization ("Disclosure Statement")[16] on June 17, 2015.[17] Also on June 17, 2015, the Court granted the Motion for Sale of Property Free and Clear of Liens which provided procedures for the Court conducted auction.[18]

---

[13] Exh. 11 and Case no. 08-11322, P-208, Exh. A, pp. 17-18.

[14] Case no. 14-12770.

[15] Case no. 14-12772.

[16] 14-12270, P-171; 14-12772, P-291.

[17] 14-12770, P-176; 14-12772, P-299.

[18] 14-12770, P-175; 14-12772, P-298.

6

On July 15, 2015, Bay Bridge timely filed Proof of Claim 5 ("2014 Claim") in 800 Bourbon's bankruptcy case.[19] Bay Bridge claimed a debt of $1,979,886.47 secured by the building located at 800 Bourbon Street. Attached to the 2014 Claim is a ledger, the Collateral Mortgage, Collateral Mortgage Note, $1.2M Note, $200K Note, $110K Note, and $90K Note, letters evidencing a 2009 agreement between 800 Bourbon and Bay Bridge, and the Order Confirming the 2009 Plan. The same Notes and Mortgage formed the basis for Bay Bridge's claim in the confirmed 2009 Plan.

On July 21, 2015, 800 Bourbon filed the instant adversary proceeding objecting to Bay Bridge's proof of claim.

On July 22, 2015, directly prior to the confirmation hearing, the Court held an auction of substantially all of the assets of 800 Bourbon and La. Interests, including Bay Bridge's collateral. The prevailing bid for $8,175,000 was approved by an Order entered on August 3, 2015.[20] On that same date, the Court confirmed the Second Amended Joint Plan of Reorganization filed by 800 Bourbon and La. Interest ("2015 Confirmation Order").[21]

At the confirmation hearing, Bay Bridge agreed to waive its claim for attorney's fees, so the Plan would be confirmable. By agreement between Bay Bridge, 800 Bourbon, and La. Interests, the Order approving the sale and the 2015 Confirmation Order provided for the escrow of $1,649,000

---

[19] Exh. 27- 2-A. In a Chapter 11 case, there is no default deadline to file proofs of claim. Because 800 Bourbon had not previously filed a Motion to Set a Deadline to File Proofs of Claim, the Court's Order Approving Debtor's Second Amended Joint Disclosure Statement set the deadline to file proofs of claim as July 15, 2015. Case 14-12770, P-176. As a result, creditors contesting their scheduled status or amount were required to file a proof of claim no later than July 15, 2015.

[20] Case 14-12770, P-242.

[21] *Id.* at 240.

of sale proceeds subject to a lien in favor of Bay Bridge in exchange for Bay Bridge's release of its

mortgage against 800 Bourbon's property.  The escrow is to be held until further order of this Court.

The Original Complaint filed by 800 Bourbon against Bay Bridge included two (2) claims

for relief: 1) Bay Bridge's lien should be avoided pursuant to 11 U.S.C. § 544; and 2) Bay Bridge's

claim was unenforceable against 800 Bourbon because of a Plan of Reorganization confirmed by

800 Bourbon in 2009.[22]  800 Bourbon reserved the right to amend the Complaint to assert other

causes of action.

800 Bourbon subsequently filed an Amended Complaint asserting two (2) additional causes

of action : 1) Bay Bridge's lien should be avoided due to untimely reinscription; and 2) the

attorney's fees claimed by Bay Bridge were unsubstantiated and excessive.[23]  Again, 800 Bourbon

reserved its right to further amend its Complaint.  Bay Bridge had already waived its demand for

attorney's fees, so that claim became moot.  An Answer was filed by Bay Bridge on August 21,

2015.[24]  800 Bourbon has not requested further amendment of the Complaint.

On September 1, 2015, 800 Bourbon filed a Motion for Summary Judgment ("MSJ").[25]  The

MSJ asserted that Bay Bridge's lien was avoidable, as a matter of law, pursuant to 11 U.S.C. §544.

800 Bourbon prayed: "that summary judgment be entered in [its favor] avoiding any liens

---

[22] P-1.

[23] P-7.

[24] P-9.

[25] P-10.

8

purportedly held by Bay Bridge, disallowing its claim, and for such other and further legal and equitable relief to which [it] may be justly entitled."[26]

Bay Bridge opposed the MSJ and filed a Cross Motion for Summary Judgment ("Cross Motion").[27] Bay Bridge sought judgment, as a matter of law, that it "had a valid, perfected lien on the property at 800 Bourbon Street on the filing date, and ... on the proceeds of the sale."[28] Bay Bridge further prayed that 800 Bourbon's Complaint be "dismissed, and the funds escrowed for Bay Bridge's claim released."[29]

Before hearing on the motions, 800 Bourbon represented that only limited discovery was required to address the issues presented by the MSJ and Cross Motion. It further asserted that full discovery would be a waste of time and money. As a result of the conference, the Court barred any discovery pending hearing on the MSJ and Cross Motion with one exception. By agreement between the parties, Bay Bridge was ordered to provide to 800 Bourbon:

> [D]ocuments showing to which account the funds loaned by Bay Bridge were initially transferred or deposited, a copy of the note, a copy of the guaranty, and a representation that Chisholm has not been released.[30]

After the response was delivered, the Court set a deadline of October 12, 2015, for 800 Bourbon to file a Motion to Conduct Discovery.[31]

---

[26] P-10, p. 9.

[27] P-17.

[28] P-17, p. 16.

[29] *Id.*

[30] P-18.

[31] *Id.*

On October 12, 2015, 800 Bourbon filed a Motion for Expedited Hearing on a Motion to Conduct Discovery.[32]  The MSJ and Cross Motion were heard by this Court on October 14, 2015, and taken under advisement.  On November 20, 2015, this Court entered a ruling granting the Cross Motion of Bay Bridge and denying the MSJ of 800 Bourbon ("Judgment").

800 Bourbon filed its first Motion for Reconsideration on December 4, 2015.[33]  The Motion alleged that new evidence, not previously available to 800 Bourbon, had been discovered after the hearings on the MSJ and Cross Motion.  Specifically, 800 Bourbon alleged that Chisholm, who is both the member that signed the Notes and Mortgage and a guarantor of the Bay Bridge debt, testified under oath that he and Bay Bridge had reached a settlement reducing the amounts due to $750,000.00.[34]

The Court granted the Motion for Reconsideration because (1) it had stayed any formal discovery pending the hearing on the MSJ and Cross Motion; (2) ordered the production of minimal documentation based on the representations of Bay Bridge; and (3) 800 Bourbon filed a timely Motion for Discovery based on the insufficiency of the documentation submitted.  As a result,  the portions of the Judgment purporting to render final judgment on the amount owed were vacated.  Pursuant to this ruling, the Court reserved for trial on the merits one issue: whether or not an alleged reduction, modification, or release of Chisholm  was previously granted by Bay Bridge and affected

---

[32] P- 21 and 22.

[33] P-31.

[34]  The testimony occurred during the 11 U.S.C. §341(a) meeting of creditors for Chisholm, in his personal bankruptcy case pending in the U.S. Bankruptcy Court for the Northern District of Florida.

the sums due to it by 800 Bourbon.  The Order granting reconsideration was entered on January 12, 2016 ("First Reconsideration Order").[35]

Following this ruling, 800 Bourbon's attorneys withdrew as counsel because 800 Bourbon suggested that a malpractice action might be filed against them.[36]

On January 26, 2016, 800 Bourbon filed a Motion to Enroll New Counsel as well as a second Motion to Reconsider.[37]  The second Motion to Reconsider alleged that Chisholm and Julian MacQueen, principal of Bay Bridge, conspired to commit fraud.  This Court denied the second Motion to Reconsider on September 7, 2016,[38] finding "[t]hat new counsel has thought of a new legal theory is not grounds for reconsideration."[39]

Prior to the new trial, Bay Bridge filed a Motion to Strike[40] 800 Bourbon's expert witnesses, and  800 Bourbon filed a Motion to Designate Issues for Trial.[41]  After entering a written Reasons for Decision, the Court found that the only issues for trial are:

> 1) Whether or not an alleged reduction, modification, or release of Johnny Chisholm  was previously granted by Bay Bridge Limited Company, L.L.C. and affected the sums due to it by 800 Bourbon;
>
> 2) Whether the $110K and $90K Notes are secured;

---

[35] P-42.

[36] P-44.

[37] P–49 and 52.

[38] P-96.

[39] P-95, p. 31.

[40] P-111.

[41] P-116.

3) The propriety of payment on the unsecured $200K Note in preference to amounts due under secured obligations.[42]

As to the Motion to Strike, the Court found:

1) The testimony of Arthur L. Schwertz, MAI, as to the value of the collateral would not be allowed at trial;

2) The testimony of Patrick J. Gros, CPA, would be allowed as to the $200,000; $110,000; and $90,000 loans;

3) The testimony of Patrick J. Gros, CPA, would not be allowed as to late fees or insolvency.

## III.  Law and Analysis

This case has been the subject of exhaustive litigation.  After many hearings and trials, there are very limited issues before the Court.  The questions for consideration concern a determination of the proper application of one large payment in 2005 and whether or not the $110K and $90K Notes are secured.  These two (2) issues have significance because depending on the outcome, 800 Bourbon will pay more or less to Bay Bridge.

800 Bourbon's position seeks to reduce the balance owed on the $1.2M Note in preference to all others on the theory that the other Notes are unsecured.  If unsecured, then the amount due to Bay Bridge from the estate will be substantially reduced as Bay Bridge's debt is only payable to the extent the debt is secured by its collateral.

### A. There Was No Reduction, Modification, or Release of Chisholm

At the beginning of trial, 800 Bourbon made it clear that it was no longer pursuing its argument that there had been a reduction, modification, or release of Chisholm.[43]  Chisholm testified

---

[42] P-129.

[43] Tr. T. 6/22/17, p. 9, ll. 5-12.

that Bay Bridge had settlement discussions with Chisholm; however, the parties did not reach a

settlement.[44]   Brooks Moore, Chief Financial Officer of Innisfree Hotels, a company owned by

MacQueen, corroborated Chisholm's testimony.[45]   The Court finds that there was no reduction,

modification, or release of Chisholm's obligations to Bay Bridge.

### B.  The $110,000 and $90,000 Loans Are Secured

Attached to the 2014 Claim are the $1.2M, $200K, $110K, and $90K Notes.  Bay Bridge

represented in its Memorandum in Response to Debtor's Supplemental Memorandum in Support

of Debtor's Motion to Reconsider that the $200K Note was originally unsecured.[46] 800 Bourbon

contends that the $110K and $90K Notes are also  unsecured because, like the $200K Note, they are

short term loans for operating expenses and are in the same form as the $200K Note.

To secure a debt with  a collateral mortgage, the borrower executes a collateral mortgage

note and a collateral mortgage to secure it ("collateral mortgage package").  The borrower then

pledges the collateral mortgage package to secure certain debts, usually represented by separate

promissory or hand notes.

> The pledge [of a collateral mortgage package] secures only the debt or debts
> contemplated in the act of pledge between the pledgor and pledgee. A collateral
> mortgage package may be pledged to secure particular debts, either previously
> existing or contracted contemporaneously with the pledge, or future loans by the
> pledgee to the pledgor - or both - up to the limits of the pledge.[47]

---

[44] Exh. 23, pp. 421-422.

[45] Tr. T. 6/22/17, p. 230, l. 21 - p. 231, l. 2.  Moore testified that Chisholm could not pay
the price requested  by Bay Bridge.

[46] Exh. 27-2-B, p. 00944.

[47] *Charrier v. Security of National of Oregon (In re Charrier)*, 167 F.3d 229, 232-233 (5th
Cir. 1999) (citations omitted).

800 Bourbon contends that Bay Bridge has not met its burden of proving that the Collateral

Mortgage Note was pledged to secure the $90,000 and $100,000 loans.

> As a general rule, Louisiana law does not require a written pledge agreement because
> the pledge of a promissory note is confected by mere delivery.  To secure future
> advances, however, a creditor must prove that the parties intended for the original
> collateral mortgage note be used for this purpose.[48]

Initially, MacQueen testified during his December 21, 2016, deposition that the $110K and

$90K Notes were unsecured.[49]  Later in his deposition, MacQueen  recanted, testifying that $110K

and $90K Notes were secured.[50]

MacQueen testified at trial that the $200K Note for operating expenses was unsecured, but

because Chisholm was behind in payments at the time the $110K and $90K Notes were made, he

insisted that the $110K and $90K Notes be secured.[51]   Bay Bridge also filed proofs of claim in both

the 2008 and 2014 Cases asserting fully secured status.  800 Bourbon's Schedules filed in the 2008

Case and signed by Chisholm are consistent with this position as 800 Bourbon listed Bay Bridge as

fully secured.[52]

The 2009 Plan identified four (4) hand notes evidencing Bay Bridge's loans to 800 Bourbon.

They were specifically described as the $1.2M, $200K, $110K, and $90K Notes.  The Plan also

acknowledged that only three (3) of those notes, the $1.2M, $110K, and $90K Notes, were to be

---

[48] *Id*. at 233 (citations omitted).

[49] Exh. 27, p. 72-75.

[50] Exh. 27, p. 70, 72-73.

[51] Tr. T. 6/22/17, p. 115, l. 12 - p. 117, l. 14; p. 119, ll. 18-22; p. 120, ll. 8 - 16.

[52] Case 08-11322, P-16, Schedule D.

14

repaid under the Plan.[53]  This results in the question presented today.  Did 800 Bourbon know of the $200K Note's prior satisfaction or was it mislead by Bay Bridge's failure to provide an accounting of that note's repayment?

Bay Bridge attached a payment history to its 2008 Claim.  The history began with the application of an $87,046.58 payment against the $1.2M Note on July 18, 2005, or the same day the $300,000 payment was made by Circuit Events.  The payment history also reflected every other payment made by Circuit Events.  The 2009 Plan establishes that 800 Bourbon clearly knew there were four (4) hand notes, and Chisholm, as 800 Bourbon's representative and the sole member of Circuit Events, knew a $300,000 payment had been made on July 18, 2005.  This leads to the inescapable conclusion that 800 Bourbon knew or had knowledge of facts sufficient to alert it to Bay Bridge's application of the $300,000 payment to the $200K Note.  Further, despite 800 Bourbon's assertion that Bay Bridge misrepresented its secured status resulting in the Debtor's assumption that Bay Bridge was fully secured, the evidence submitted at trial shows otherwise.

During the administration of the 2008 Case, 800 Bourbon was represented by Emile Turner ("Turner").  In connection with this representation, Turner uncovered  potential grounds for challenging the secured status of the $200K, $110K, and $90K Notes.  In an October 15, 2008, email to Ruben, MacQueen's executive assistant, Turner stated:

> Would you please research your files to see whether or not you have a copy of the Pledge of the Collateral Mortgage Note.  We are advised that the Collateral Mortgage and Note may be defective without the notarial pledge.[54]

Ruben testified that  no pledge agreement was produced as none existed.

---

[53]  Exh. 11 and Case 08-11322, P-208, Exh. A, p.17.

[54]  Exh. 28-4.

What this email reveals is that Turner knew that without a written pledge agreement, Bay Bridge's secured status on the subsequent advances was subject to challenge. But Turner also knew that whether or not the four (4) hand notes were all secured, they were all in default; Bay Bridge had accelerated payment; and 800 Bourbon's property was available to satisfy them either through foreclosure or payments to secured and unsecured creditors in a plan.[55]

The 2009 Plan provided for the repayment of the $1.2M, $90K, and $110K Notes through weekly installments by Chisholm and Circuit Events.[56]   800 Bourbon was released from any personal liability on the Notes but the Plan did represent:

> The Collateral Mortgage secures a loan in the principal amount of $1.2 million by Bay Bridge in April, 2005, a loan in the amount of $110,000 by Bay Bridge in May, 2006, and loan in the amount of $90,000 by Bay Bridge in June, 2006.[57]

Given Turner's discovery that no pledge agreement definitively established the secured status of the subsequent advances, this Court concludes that the treatment of the entire Bay Bridge loan as fully secured was a bargained for agreement between 800 Bourbon and Bay Bridge.   Evidence to that effect is bolstered by a May 20, 2009, letter from MacQueen to 800 Bourbon's counsel in the 2008 Case outlining the terms of restructure for the debt.[58]   The letter was subsequently signed by

---

[55]  In the 2008 Case, 800 Bourbon scheduled the value of its real estate at $4,900,000. Case 08-11322, P-16, Schedule A.  As previously indicated, First Bank & Trust held a first mortgage with a balance of $2,340,193.85. Case 08-11322, Claim 5.  This left over $2,500,000 in equity available to satisfy Bay Bridge and other creditors.  If accurate, that equity was sufficient to pay all claimants in full, whether secured or unsecured. By confirmation, the estimated value had been reduced to $3,300,000 by Debtor.  Case 08-11322, P-191, p. 10. However, 800 Bourbon negotiated a consensual plan by paying all allowed claims 100 percent, and the Court was not asked to make a finding as to the property's value.

[56]  Exh. 9, p. 00175; Case 08-11322, P-192, Exh. C.

[57] Exh. 11 and Case no. 08-11322, P-208, Exh. A, p. 17.

[58] Exh. 9, p. 00175; Case 08-11322, P-192, Exh. C.

16

Chisholm before being filed into the record of the 2008 Case as Exhibit C to the Disclosure Statement and evidences agreement that the Collateral Mortgage secures the $1.2M, $110K, and $90K Notes.

In addition, the 2009 Plan granted 800 Bourbon sixty (60) days postconfirmation to object to Bay Bridge's 2008 Claim, but 800 Bourbon chose not to object.[59]   Thus, whether or not the $110K and $90K Notes were secured in 2006, they were made secured by agreement of the parties and the confirmed 2009 Plan.   As a result, the Court finds that the $110K and $90K Notes are secured.

### C. Was the $300,000 Payment Properly Applied to the $200K Note?

Circuit Events made a payment of $300,000 to Bay Bridge on July 18, 2005.[60]  Bay Bridge applied this payment to the $200K Note paying it off in full in the total amount of $212,953.42.[61] The remainder of the payment, $87,046.58, was applied to the $1.2M Note.[62]  Issue one concerns the application of this payment.  800 Bourbon contends that the $300,000 payment should have been applied to the secured $1.2M Note rather than the $200K Note.

---

[59] Exh. 11 and Case 08-11322, P-208, Exh. A. ¶ 10.05(b).

[60] Exh. 12.

[61]  The $200K Note was made on May 31, 2005, bore interest at prime plus 5% and matured by its own terms on June 15, 2005.  If not paid on that date, an additional 5% late charge was owed.  Thus, on July 18, 2005, when the $300,000 payment was received, the outstanding balance on the $200K Note was $212,953.42 assuming an applicable interest rate of 11.5%.

[62] The ledger attached to the 2014 Claim only shows the balance on the $1.2M; $110K; and $90K Notes.  It does not show the payoff of the $200K Note.  The ledger shows a  payment of $87,046.58 on July 18, 2005, representing the remainder of the $300,000 payment after payoff of the $200K Note with interest. Exh. 27-2-A, p. 00907.

Bay Bridge failed to produce any evidence regarding 800 Bourbon's direction for the payment. Instead, it relies on unchallenged accountings allegedly delivered to 800 Bourbon and implicating the application of payment to the $200K Note as either acquiesce or waiver of objection to its choice of application. The Court finds this evidence to be insufficient to establish that Chisholm or 800 Bourbon knew and accepted Bay Bridge's application of funds at least until the confirmation of the 2009 Plan.

As set forth above, the Court concludes that 800 Bourbon was aware of a potential defect in Bay Bridge's secured claim during the 2008 Case. It was also aware that the $200K Note had been satisfied prior to the satisfaction of the $1.2K Note. Despite opportunity to object, 800 Bourbon accepted Bay Bridge's calculation of its debt.

Louisiana C.C. Art. 1867 provides:

> An obligor who has accepted a receipt that imputes payment to one of his debts may no longer demand imputation to another debt, unless the obligee has acted in bad faith.

Although facts sufficient to raise the potential challenge to secured status and the application of payment were known to 800 Bourbon prior to confirmation of the 2009 Plan, 800 Bourbon provided for both Bay Bridge's calculation of debt and secured status in the 2009 Plan. A confirmation order can only be revoked within 180 days of its signing and only if it was procured by fraud, and no fraud has been proven.[63] For these reasons, the Court concludes that 800 Bourbon waived any claim to reamortize the obligation owed to Bay Bridge in 2009. But even if a challenge were allowed, the Court holds that the methodology of application would make no difference to the secured obligations owed by 800 Bourbon in this case.

---

[63] 11 U.S.C. § 1144.

18

Louisiana C.C. Art. 1868 determines how payments should be imputed when not specified by the parties. The Article provides in pertinent part:

> When the parties have made no imputation, payment but be implied to the debt that is already due.
>
> If several debts are due, payment must be imputed to the debt that bears interest.
>
> If all, or none, of the debts that are due bear interest, payment must be imputed to the debt that is secured.....

On the date the $300,000 payment was made, both the $1.2M Note and $200K Note had past due amounts owing. Both also bore interest. Based on La. C.C. Art. 1868, the distinguishing factor for application of payment becomes secured versus unsecured status. There is no dispute that the $200K Note was originally unsecured and the $1.2M Note secured.

Assuming Circuit Events did not direct the method of application, on July 18, 2005, Bay Bridge should have reduced the balance owed on the $1.2M Note by $300,000. This would have left a reduced balance of $941,698.16 on that Note after the payment of accrued interest and late charges. The amount due on the $200K Note would have remained $212,953.42. Thereafter, both Notes would have continued to bear interest at their contractual rates until the filing of the 2008 Case.

Following the $300,000 payment, Circuit Events continued to make additional payments to Bay Bridge. In total, an additional $300,000 was paid and applied to the $1.2M Note on or before December 31, 2005. Applying these payments to accrued interest and then principal leaves a balance due on the $1.2M Note of $660,720.08 in principal and $1,710.20 in accrued but unpaid interest as of December 31, 2005. Because the $200K Note would have remained outstanding, its balance as of December 31, 2005, would have been $223,384.86.

19

On May 31, 2006, an additional advance of $110,000 was made by Bay Bridge to Circuit Events.  Then on June 15, 2006, another $90,000 was loaned.  By the time 800 Bourbon filed for bankruptcy relief in 2008, the total debt outstanding to Bay Bridge would have been $1,384,204.18 if calculated under the contractual terms of the Notes and if the $300,000.00 payment was applied to the $1.2M Note.  Instead, Bay Bridge claimed a debt of $1,364,851.83.  The difference can be explained based on Bay Bridge's amortization of the Notes.

Rather than charge prime plus 5% on the $200K, $110K, and $90K Notes, Bay Bridge actually charged prime plus 1%, a savings of 4% on $400,000 in principal debt.  From execution to the filing of the 2008 Case, this saved 800 Bourbon $40,735.64 in interest.  In addition, during this same period Bay Bridge charged $82,615.05 in late penalties on the four (4) Notes, $20,000.00 of which would have been satisfied from the payment of the $300,000 installment.[64]  Under the terms of the Notes and as of the filing of the 2008 Case, Bay Bridge could have contractually assessed only $80,000.00 in penalties.[65]  Nevertheless, the difference of $2,615.05 is more than offset by the interest savings.

But, 800 Bourbon complains that the order of reduction matters because the $200K Note was unsecured.  Therefore, if it remained outstanding, the amount of secured or *in rem* debt would be

---

[64] The $1.2M Note was charged $72,615.05 and the $200K Note, $10,000.00.  No penalties were assessed on the $110K or $90K Notes.

[65] Each Note carried a 5% penalty on missed payments.  By June 11, 2006, three (3) $400,000 installments had been missed on the $1.2M Note, entitling Bay Bridge to assess $20,000.00 each or $60,000.00 for the missed installments.  The $200K, $110K, and $90K Notes had no installments but matured, and none were repaid on their respective maturity dates.  Therefore, an additional $10,000.00; $5,500.00; and $4,500.00 respectively could have been added to each of these Notes' balances.

20

reduced.  Following the confirmation of the 2009 Plan, the issue regarding application of payment becomes moot, at least as to the calculation of the *in rem* debt balance.

The 2009 Plan provided that Bay Bridge's claim was represented by the $1.2M, $200K, $110K, and $90K Notes.  It is important that all four (4) notes are identified as representing the Bay Bridge debt.  As previously discussed, Turner was aware of the absence of a pledge agreement and knew that the secured status of the three (3) smaller notes could  be challenged.  So in exchange for Bay Bridge's release of 800 Bourbon's personal liability, the extension of repayment terms, and Chisholm's and Circuit Events' agreements to satisfy the renegotiated  loan, Turner and 800 Bourbon converted an arguably unsecured debt represented by the $200K, $110K, and $90K Notes to secured ones.  The 2009 Plan also allowed 800 Bourbon a window of opportunity to challenge or verify the calculation of Bay Bridge's debt  following confirmation.  It did not.

Given that at the time of the 2008 Case, 800 Bourbon was responsible for full payment on the Notes whether secured or unsecured; the Notes were fully due; the payoff was actually less than might be legally owed; and repayment terms were offered in amounts that the parties assumed could be made by persons other than 800 Bourbon, this Court cannot hold that Bay Bridge's treatment in the 2009 Plan was unwarranted.   Therefore, because the 2009 Plan treated Bay Bridge's entire debt as secured,   it does not matter what was outstanding under which Note in 2008 as following confirmation in 2009, all were converted to secured status.

800 Bourbon's final argument is that the 2009 Plan did not determine the amount of Bay Bridge's *in rem* claim. This issue was raised by 800 Bourbon after the Court granted a new trial on

21

three (3) limited issues.  Because the total amount of Bay Bridge's *in rem* claim is not one of the three (3) issues designated for trial,[66] this argument is not properly before the Court.

## III.  Conclusion

The Court finds that Bay Bridge did not reduce, modify, or release Chisholm of any debt. The $90K and $110K Notes are secured.   The application of the $300,000 payment and secured status of the Bay Bridge obligation were accepted by 800 Bourbon as part and parcel of the 2009 Plan and cannot be challenged.   Accordingly, Bay Bridge has an allowed secured claim in the amount of $1,649,000.   800 Bourbon shall release those funds from escrow to Bay Bridge.  A separate Judgment will be entered in accord with this Memorandum Opinion.

New Orleans, Louisiana, October 31, 2017.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[66] See P-129 and pp. 11-12 *supra*.